Johnny Ray ANDERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 69135.

Court of Criminal Appeals of Texas,
En Banc.

July 2, 1986.

Charles D. Carver, Port Arthur, Ronald Plessala, Nederland, for appellant.

James S. McGrath, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

This is an appeal taken from a conviction for capital murder. V.T.C.A., Penal Code Sec. 19.03. The death penalty was imposed after the jury answered affirmatively the two special issues submitted under Art. 37.071, V.A.C.C.P. Appellant brings twelve grounds of error before this Court. The sufficiency of the evidence to support the verdicts was contested. We affirm the conviction.

Because appellant challenged the sufficiency of the evidence, we will review the facts of the instant offense. On October 1, 1981, the body of Ronald Goode, the victim, was discovered in a wooded area near Loop Road in northern Jefferson County. His car was found parked on Loop Road, approximately 20 feet from where his body lay. Several shotgun shells and bullet casings were also found at the scene: one live 30.06 shell and two fired 30.06 casings were found in the woods near the body of the deceased; one .410 shotgun shell was found on the road; and one fired .410 shell was found in the grass next to the road. Ronald Goode had been shot three times. His death was caused by a 30.06 gunshot wound to his head.

At trial the State offered the theory that a conspiracy existed between the appellant, Rowena Anderson (appellant's mother), Laura Goode (appellant's sister and the victim's wife), and Delvin Johnson to kill the victim.

At the appellant's trial, Delvin Johnson testified for the State. Johnson became

acquainted with the other three conspirators a couple of months prior to October 1, 1981. On September 30, 1981, Laura Goode asked Delvin Johnson to kill her husband, Ronald Goode, in return for $5,000.00. Johnson accepted this offer. On that same day, Rowena Anderson offered Johnson $6,000.00 to take part in the murder of Ronald Goode.

Later that day, a 30.06 rifle was delivered to Rowena Anderson's home. At this time, Johnson, the appellant, Laura Goode and Rowena Anderson made their plans for the killing of Ronald Goode. After the four conspirators agreed to a plan, appellant and Johnson left at either midnight or in the early morning hours of October 1, 1981. They made the trip in Johnson's car, taking the 30.06 rifle and the .410 shotgun with them.

They stopped at one point, while the appellant made a phone call to lure Ronald Goode out to the Loop Road, where his body was later discovered. During their ride to this designated area, appellant told Johnson that Laura Goode was going to pay the appellant $10,000.00 for murdering Ronald Goode. This money was to come from the insurance policy on the life of Ronald Goode, of which Laura Goode was the beneficiary.

When Ronald Goode arrived at the murder scene, appellant and Johnson were waiting for him. Appellant shot Ronald Goode the first time with the .410 shotgun. This did not kill Goode, so the appellant beat Goode with the butt of the shotgun. While Goode, still alive, crawled into the woods by the side of Loop Road, the appellant retrieved the 30.06 rifle from Johnson's car. Appellant and Johnson followed Goode into the woods, where Johnson held a cigarette lighter so appellant could clearly see the prone victim well enough to shoot him again. Appellant then shot Goode twice with the 30.06. One of these two shots was to Goode's head. Appellant and Johnson then left the murder scene.

Police investigators later recovered the shells and casings which were at the scene, as well as the .410 shotgun and 30.06 rifle

used in the murder. Analysis by the Department of Public Safety laboratory revealed that the shells and casings found at the scene were fired from the said guns.

In his first ground of error, appellant complains that the trial court erred by not granting his motion for new trial. Appellant stated in that motion that the testimony of his mother, Rowena Anderson, was newly available to his defense.

Appellant's sister, Laura Goode, and Rowena Anderson, were also his co-defendants to the charge of capital murder. Originally, they were tried on the charges first. Laura Goode was convicted and a mistrial was declared in the case against Rowena Anderson. At this point, the State requested that the appellant be tried before the retrial of Rowena Anderson. Appellant objected because Rowena Anderson stated in an affidavit that she wished to testify on her son's behalf. She also stated in the affidavit that if appellant's case was tried first and she was called as a witness, that she would invoke her Fifth Amendment right to not incriminate herself.

The trial court granted the State's request to try the appellant before retrying his mother. After his conviction, appellant was sentenced by the trial court on February 12, 1983. His mother was acquitted in her second trial on July 21, 1983.

In a motion to abate appeal filed on February 16, 1984, appellant requested this Court to order the trial court to conduct an evidentiary hearing on the issue of the newly available testimony of his mother, who had been acquitted seven months prior to the filing of the motion. This Court denied the motion.

On April 2, 1984 [more than one year after appellant was sentenced] he filed a motion for new trial with the trial court. After stating that "this court no longer has jurisdiction to entertain" that motion, the trial court ordered the clerk of his court to "immediately transmit the motion to the Clerk of the Court of Criminal Appeals." On April 6, 1984, appellant filed a second motion to abate appeal with this Court.

Attached to this was the appellant's motion for new trial and his mother's affidavit, which set out in detail what her testimony would be at appellant's new trial. This Court denied that motion on April 6, 1984.

■ Appellant was barred from calling his mother as a witness in his defense. A defendant may not call as a witness a co-defendant who has indicated she will assert her privilege against self-incrimination. *Whitmore v. State,* 570 S.W.2d 889 (Tex. Cr.App.1978).

■ However, after the co-defendant witness has been finally convicted or acquitted, that witness' testimony becomes available to the defendant. Even though the witness' testimony is more properly described as "newly available," this Court has held that the witness' testimony is to be considered "newly discovered." *Whitmore,* supra; *Franco v. State,* 491 S.W.2d 890 (Tex.Cr.App.1973). A defendant can bring this to the trial court's attention in a motion for new trial. Art. 40.03(6), V.A.C. C.P.

Article 40.05, V.A.C.C.P., also requires that a motion for new trial be filed within "30 days after the date the sentence is imposed." In the instant case, appellant filed his motion for new trial 415 days after the trial court imposed the death penalty.

■ In *Whitmore,* supra, the defendant also failed to file his motion for new trial on time. This Court held that "neither ... (a rule of evidence or a valid statute governing the time for filing motions for new trial) ... can be applied so as to deprive an accused of a right secured by the Constitution." *Whitmore,* supra. This Court then made a determination of whether the defendant exercised due diligence in filing his motion for new trial after the witness became available. Since the defendant filed his motion for new trial four days after the witness became available, this Court decided that he acted with due diligence. We will apply the same test to appellant's motion for new trial.

After his co-defendant's testimony became available to him appellant waited 256 days, over eight months, before filing his motion for new trial. In his motion for new trial, appellant's attorney (Mr. Carver) states that from July 21, 1983, until October 4, 1983, he was involved in the defense and appeal of two other capital cases. However, concerning the 180 days, six months, from October 5, 1983, until April 2, 1984, appellant's attorney gives no adequate excuse except that he was clearing a backlog of cases. Also, appellant had two attorneys representing him on appeal. There was no indication in appellant's motion that his other attorney (Mr. Plessala) was unable to timely file a motion for new trial. Therefore, there is no adequate justification for the delay that occurred before a motion for new trial was filed in the instant case. We hold that appellant failed to exercise due diligence in filing his motion. Appellant's first ground of error is overruled.

Appellant argues, in his second ground of error, that the trial court committed reversible error by compelling him to proceed to trial in advance of his mother, thereby denying the appellant compulsory process of a witness. Appellant incorporated, in this second ground, all arguments and authorities cited in his first ground of error. He offered nothing else for this Court to review. Appellant's second ground of error is overruled.

■ In appellant's sixth ground of error, he states that the trial court erred by admitting hearsay testimony from the first witness called by the State. Appellant complains that this testimony was prejudicial to him, concerned the acts and statements of third persons, and was timely objected to by his counsel.

Under questioning on direct examination the State's witness testified as follows:

"Q. Was there any conversation about where Johnny's car was?

"A. Yes, sir. he said that him ...

"DEFENSE ATTORNEY: Your Honor, I am going to object to hearsay declarations by Mr. Ronnie Goode.

"THE COURT: Overruled.

"A. He said that him and his wife was having trouble and that she had the car."

Since the deceased's wife, Laura Goode, was appellant's co-defendant, he claims this testimony was prejudicial because it helped to show a motive for the murder of the deceased (that the appellant and Laura Goode killed the deceased because of marital trouble between the deceased and Laura).

Other evidence of the "trouble" was admitted without objection by the appellant. Delvin Johnson testified, on cross-examination by appellant, that "She (Laura Goode) said that she was having marital problems." When the appellant testified in his own defense, he referred to this "trouble":

"A. (Defendant): I asked her why in the hell she had him killed?

"Q. (Defense counsel): What did she say?

"A. She turned and told me she was just tired of him.

". . .

"Q. Was there any particular reason that she (Laura Goode) was staying there that night?

"A. Yes.

"Q. What was that?

"A. Her and Ronnie got in a fuss."

▪ Whether or not the testimony complained of was admissible as an exception to the hearsay rule is irrelevant. If the fact to which the hearsay relates is sufficiently proved by other competent and unobjected to evidence, as in the instant case, the admission of the hearsay is properly deemed harmless and does not constitute reversible error. *Davidson v. State*, 386 S.W.2d 144 (Tex.Cr.App.1965); *Huff v. State*, 560 S.W.2d 652 (Tex.Cr.App.1978); *Wilder v. State*, 583 S.W.2d 349 (Tex.Cr. App.1979); *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr.App.1981); *Armitage v. State*, 637 S.W.2d 936 (Tex.Cr.App.1982). We find that the objected to hearsay, in the instant case, is harmless and does not constitute reversible error. Ground of error number six is overruled.

In his seventh ground of error, appellant states that the trial court erred when it allowed the State to place appellant's "general reputation" before the jury when the appellant had not placed his reputation in issue. While testifying under direct examination by the State, witness Delvin Johnson stated:

"Q. (By the State): What was your impression of the Andersons?

"DEFENSE ATTORNEY: Your Honor, I object to his impression of the Andersons as not being material or relevant.

"THE COURT: Overruled.

"Q. (The State): What was your impression of the Andersons?

"A. (by Johnson): They seemed to be a violent type of family, always arguing
. . .

"DEFENSE ATTORNEY: I renew my objection. He is now attacking the character of the Defendant on trial.

"THE COURT: Overruled.

"Q. (The State): You can answer the question, Delvin.

"A. (by Johnson): I said they seem to be a violent type family. They were always arguing and fighting amongst each other and the other neighbors."

After testifying to this, Delvin Johnson identified the appellant for the jury as one of the members of the Anderson family.

▪ It is reversible error for the State to place a defendant's reputation in issue before a jury, when the defendant has not first raised the issue. *Els v. State*, 525 S.W.2d 11 (Tex.Cr.App.1975). In *Els*, supra, the State asked a defense witness seven separate "have you heard" questions regarding the defendant's prior arrests. This Court ruled that the defendant's reputation in the community was not placed in issue prior to this cross-examination by the State. The instant case is distinguishable from *Els*. Here, the State, in its case in chief, elicited testimony from a witness concerning his personal impression of the appellant's family. Appellant contends that this amounted to the State improperly placing his reputation in issue.

We disagree. In the instant case, the testimony of Delvin Johnson was his personal opinion of the Anderson family's propensity to violence. Johnson did not testify concerning the appellant's reputation in the community, as communicated to him by other citizens and law enforcement officers, as a peaceful and law-abiding citizen. Instead, Johnson's testimony reflected his personal opinion of the Anderson family's violent character. Testimony such as Johnson's did not place the appellant's reputation in issue. *Washington v. State*, 590 S.W.2d 493 (Tex.Cr.App.1979); *Ward v. State*, 591 S.W.2d 810 (Tex.Cr.App.1980); *Penagraph v. State*, 623 S.W.2d 341 (Tex. Cr.App.1981); *Long v. State*, 631 S.W.2d 157 (Tex.Cr.App.1982); *Stephens v. State*, 660 S.W.2d 85 (Tex.Cr.App.1983).

■ The State's question to Delvin Johnson did not ask for an opinion as to the appellant's character, but as to his family's history of violent behavior. However, shortly after Delvin Johnson answered this question, he identified the appellant, in court, as the Johnny Anderson he had been testifying about. The obvious inference is that Johnson was testifying about appellant's violent character. Defense counsel's objection was that the State was "attacking the character of the defendant." We must decide if the admission of this testimony was harmless error, or if its admission had an adverse impact on the appellant's conviction or on the jury's findings at punishment.

■ If the improper admission of character evidence adversely affects the appellant by contributing to his conviction, or by contributing to the punishment assessed, a reversal of the conviction is necessary. *Jordan v. State*, 576 S.W.2d 825 (Tex.Cr. App.1979); *Clemons v. State*, 605 S.W.2d 567 (Tex.Cr.App.1980). Later, this Court confirmed that the test to determine if an error was harmless is "whether there is a reasonable possibility that the evidence ... might have contributed" to the conviction or punishment. *Johnson v. State*, 660 S.W.2d 536 (Tex.Cr.App.1983).

■ Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove. *Kerns v. State*, 550 S.W.2d 91 (Tex.Cr.App.1977); *McManus v. State*, 591 S.W.2d 505 (Tex.Cr. App.1979); *Sanne v. State*, 609 S.W.2d 762 (Tex.Cr.App.1980) (other "evidence was abundant in demonstrating defendant Skillern's antisocial personality" for the second punishment issue in Skillern's capital murder trial.); *Turner v. State*, 614 S.W.2d 144 (Tex.Cr.App.1981) ("other evidence that defendant penetrated victim"); *Smith v. State*, 676 S.W.2d 379 (Tex.Cr.App.1984) (in a capital prosecution, "proof was offered at the penalty stage of 5 prior felony convictions"; these rendered harmless the improper admission of an attempted escape by defendant.)

Second, this evidence would also be rendered harmless if the defendant himself testified in agreement with that evidence. *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr. App.1980). Lastly, it would be deemed harmless if the other evidence of the defendant's guilt is overwhelming, independent of the erroneously admitted evidence. *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App. 1977); *Saunders v. State*, 572 S.W.2d 944 (Tex.Cr.App.1978); *Yarbrough v. State*, 617 S.W.2d 221 (Tex.Cr.App.1981).

Other evidence was admitted at trial, without defense objection, that supported Johnson's statements about the violent history of the Anderson family. The appellant testified about the violent tendencies of other members of his family. Because of this, it cannot be held that Johnson's testimony adversely affected appellant by contributing to his conviction and the punishment which he received. Johnson's testimony about the Anderson family was harmless. Ground of error seven is overruled.

■ Appellant urges, in his fourth ground of error, that the trial court erred in permitting the State to impeach its own witnesses. We disagree. The two State

witnesses involved were Delvin Johnson and Victor Sturm.

On direct examination, Delvin Johnson testified that he had signed a confession that he committed the crime of murder. Later, still on direct examination, Johnson testified that he was guilty, as a party, of capital murder. When Victor Sturm testified on direct examination, he stated that his pending burglary charge was not his first brush with the law. All three times, appellant made timely objection that the State was impeaching its own witness. The trial court overruled appellant's objections.

In his brief, appellant refers to the rule of law that "a party may not impeach his own witness unless the witness testifies to facts injurious to that party's case and the party demonstrates that he was surprised by such testimony." *Houston v. State*, 626 S.W.2d 43 (Tex.Cr.App.1982); *Puckett v. State*, 640 S.W.2d 284 (Tex.Cr.App.1982). Since the State's witnesses did not surprise the State with their testimony, appellant believes their testimony was improperly admitted.

However, the instant case is not a situation where the "witness goes over to the enemy and offers a fact destructive in whole or in part of the cause of the party introducing him." *Baum v. State*, 133 S.W. 271, 60 Tex.Cr.R. 638 (1910). The State, as a party to a criminal action, must guarantee the general credibility of its witnesses. In the instant case, the State was merely complying with this policy by asking about the criminal history of its witnesses. The State was not offending this policy. As such, the State was not trying to impeach its own witness. *Jackson v. State*, 516 S.W.2d 167 (Tex.Cr.App.1974), note 2 at 176. Therefore, the general rule set out in *Houston*, supra, and *Puckett*, supra, does not apply.

Instead, the instant case is a situation where the State placed its witnesses in the context of their background. These were proper matters for preliminary inquiries. *Carrillo v. State*, 566 S.W.2d 902 (Tex.Cr. App.1978) and *Ortiz v. State*, 577 S.W.2d

246 (Tex.Cr.App.1979). The inquiries into Johnson and Sturm's criminal histories were admissible because they enabled the jury to assess both the weight to be given their testimony, as well as the credibility of Johnson and Sturm themselves. *Williams v. State*, 604 S.W.2d 146 (Tex.Cr.App.1980). Appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant complains that the trial court erred in permitting the State to bolster the testimony of three of its witnesses, Delvin Johnson, Jerry Mincey and H.V. Sturm, on nine separate occasions.

■ Initially, appellant claims that the State improperly bolstered its own witness, Delvin Johnson, at four separate times. First, the State bolstered the testimony of Johnson by asking him on direct about the terms of his plea bargaining agreement with the State. Appellant objected to this testimony, but the trial court overruled him and admitted the evidence.

Again, this is a situation where the State placed its witness in the context of his background. As such, it was a proper matter for preliminary inquiries to ask Johnson about the plea bargaining agreement he entered into with the State for his role in the murder of the deceased. *Carrillo*, supra, and *Ortiz*, supra.

■ Second, the State asked the witness, Johnson, on redirect examination about the absence of convictions in his prior criminal history. Appellant contends this was improper bolstering by the State. However, the State obtained this testimony after Johnson was extensively cross-examined by appellant. This cross-examination revealed Johnson's inconsistencies with his prior testimony, his possible motive to tailor his testimony, and his prior arrests. The State elicited this testimony only to confront these impeachments of Johnson by appellant. There was no error in admitting this testimony. *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979); and *Bilbrey v. State*, 594 S.W.2d 754 (Tex.Cr.App.1980).

■ Third, the State asked Johnson whether or not he had testified, during his pre-trial hearing, that everything he said in his confession was true. Johnson replied, "Yes." The appellant objected that this was improper bolstering. The trial court sustained that objection and instructed the jury to disregard Johnson's answer. Appellant requested no further relief, thereby waiving any possible error. *Dickson v. State*, 492 S.W.2d 267 (Tex.Cr.App.1973); *Weedon v. State*, 501 S.W.2d 336 (Tex.Cr.App.1973); and *Williams v. State*, 549 S.W.2d 183 (Tex.Cr.App.1977).

■ Fourth, appellant claims that it was reversible error for the State to ask Johnson, on a separate occasion, if what he said in his confession was true. Appellant immediately objected and requested an instruction for the jury to disregard and a mistrial. The trial court sustained the objection and instructed the jury to disregard the question. Johnson had no opportunity to answer the State's question. The trial court denied appellant's request for a mistrial. Appellant argues this was error. We hold that the trial court's instructions to the jury rendered the error, if any, harmless. *Frison v. State*, 473 S.W.2d 479 (Tex.Cr.App.1971), and *Hawkins v. State*, 505 S.W.2d 578 (Tex.Cr.App.1974).

■ Next, appellant argues that the State improperly bolstered its witness, Jerry Mincey, on two separate occasions. First, appellant claims the trial court erred by permitting the State to ask Mincey, on re-direct examination, if his statement to the police was true and correct. The appellant objected to the trial court, and was sustained. Mincey was never allowed to answer the question. Appellant requested no further relief. There is no error preserved. *Dickson*, supra; *Weedon*, supra; and *Williams*, supra.

■ Second, appellant alleges that the State improperly bolstered Mincey when it asked him if his prior statements had helped to refresh his memory. Appellant objected and was overruled. Mincey responded that his prior statement had re-freshed his memory. Bolstering is an improper use of testimony by the State to add credence or weight to some earlier piece of evidence. *Pless v. State*, 576 S.W.2d 83 (Tex.Cr.App.1979). In the instant case, Mincey's answer was not bolstering of his earlier testimony. There was no error by the trial court.

Last, appellant asserts that the State improperly bolstered its witness, Harmon Sturm three times. First, the State asked Sturm if he had been promised anything for his testimony. Appellant immediately objected, and the trial court overruled him. Sturm then answered that he had not been promised anything.

■ Later, while still on direct, the State asked Sturm if "anyone implied that your case would be helped by your testimony?" Sturm answered, "No." During his defense, appellant called Sturm's attorney to the stand, where he testified that his client was not promised anything by the State. This action by appellant's counsel waived any potential error in Sturm's testimony.

■ Finally, appellant argues that the trial court erred when it overruled his objection to the State asking Sturm if he was sure that "these are things he (appellant) told you and not Delvin Johnson?" Appellant objected, the trial court overruled appellant, and Sturm answered, "Yes, sir." This was not an attempt to bolster Sturm's testimony. Nothing was said by Sturm to add credence or weight to his earlier testimony. Appellant's fifth ground of error is overruled.

■ In his eighth ground of error, appellant states that there was insufficient evidence at trial to prove that the murder of the deceased was carried out "for the promise of remuneration." Appellant argues that the State had the burden to corroborate, through non-accomplice witnesses, that the appellant was to be paid current money of the United States by Laura Goode. Appellant claims that this Court's ruling in *Granger v. State*, 605 S.W.2d 602 (Tex.Cr.App.1980), that the State must cor-

roborate the accomplice's testimony on the element of the offense which elevated the murder to capital murder, supports this argument.

■ We disagree with appellant. Recently this Court decided that the testimony of an accomplice witness in a capital murder case need not be corroborated on the element which elevated the murder to a capital murder. *Holladay v. State*, 709 S.W.2d 194 (Tex.Cr.App.1986). There is only one rule for the corroboration of the testimony of an accomplice witness. Art. 38.14, V.A.C.C.P. This rule applies to all crimes, including capital murder. As this Court stated in *Holladay*, supra, "where the state relies upon an accomplice witness' testimony to convict the accused for a particular offense, the accomplice witness' testimony must be both material and must be corroborated by independent evidence tending to connect the accused with the offense." To the extent that *Granger*, supra, is in conflict, it is overruled.

■ Appellant told Johnson on the night of the murder that appellant would receive $10,000.00 for killing the victim. Johnson testified that, as part of the conspiracy, he would receive $5–6,000 in insurance money. Both Harold Sturm and Jerry Mincey, who were not accomplices, testified that appellant told them he was to receive at least $10,000.00 in insurance proceeds for the murder of the deceased. Both Sturm and Mincey knew Laura Goode was married to the deceased. The witness Carol Bridges testified that the deceased had a valid $25,000.00 insurance policy which listed Laura Goode as beneficiary. The witness Donna Anderson testified that Laura Goode had told her that the deceased's $62,000.00 insurance money was all hers. This corroborative evidence, at the least, tended to connect the appellant with the commission of the murder of Ronald Goode for the promise of remuneration. Appellant's eighth ground of error is overruled.

■ In his ninth ground of error, appellant states there is a fatal variance between the State's allegation in the indict-

ment, that the appellant committed the murder for the promise of remuneration in the form of U.S. currency to be paid to him by Laura Goode, and the evidence admitted at trial. We disagree.

As set out in our analysis of ground of error number eight, the witness Delvin Johnson testified that appellant murdered Ronald Goode for the promise of remuneration. The other state's witnesses, Sturm, Mincey, Bridges and Donna Anderson also testified to this fact. There was no fatal variance between the allegations of the indictment and the proof admitted at trial. Appellant's ninth ground of error is overruled.

■ Appellant asserts in his tenth ground of error that the trial court committed fundamental error by authorizing the jury to convict him on less evidence than that required by the indictment. The indictment charging appellant with capital murder reads, in pertinent part,

"... cause the death of an individual, Ronald Goode, by shooting him with a shotgun and by shooting him with a rifle...."

The trial court's charge to the jury at the guilt stage of the trial reads, in pertinent part,

"... caused the death of an individual, Ronald Goode, by shooting him with a shotgun or by shooting him with a rifle."

Appellant cites *Martinez v. State*, 641 S.W.2d 526 (Tex.Cr.App.1982), in support of his assertion that this variance between the indictment and the charge is a fundamental error.

Appellant misinterprets *Martinez*, supra. This Court in *Martinez* held that the trial court erred by authorizing a conviction on a theory which was not alleged in the indictment. That is not the fact situation in the instant case. *Martinez*, supra, does not support appellant's claim.

In the instant case, the indictment alleges two different theories on how the appellant caused the death of Ronald Goode. The State pled the theories in the conjunctive. The trial court charged the jury on

the two theories in the disjunctive. This Court has held on several occasions that this is not error, fundamental or otherwise. *Zanghetti v. State*, 618 S.W.2d 383 (Tex.Cr. App.1981), and *Garrett v. State*, 682 S.W.2d 301 (Tex.Cr.App.1984). Appellant's tenth ground of error is overruled.

In his third ground of error, appellant states that the prosecutor's final argument at the guilt-innocence stage was prejudicial and harmful to him because it placed "unsworn testimony" before the jury. The argument was:

> "THE STATE: Let me tell you, ladies and gentlemen, these facts are here. We've brought them to you against all odds.
>
> "MR. CARVER: I object to his testimony now as to the odds.
>
> "THE COURT: Overruled."

It is always necessary, when an objection is made for the record, to show that a proper objection was offered when the alleged error occurred. *Mathews v. State*, 635 S.W.2d 532 (Tex.Cr.App.1982). Appellant's objection, in the instant case, resembles the objections which this Court ruled were improper in *Urtado v. State*, 167 Tex. Cr.R. 318, 319 S.W.2d 711 (1958) ("Prosecutor: I wish we could send him there for the rest of his life; "Defense Attorney: such argument was instructing the jury."); *Ingram v. State*, 363 S.W.2d 284 (Tex.Cr.App. 1963) ("Defense Attorney: We take an exception to that."); *Aliff v. State*, 627 S.W.2d 166 (Tex.Cr.App.1982); and *Denison v. State*, 651 S.W.2d 754 (Tex.Cr.App. 1983)[1] ("Defense Attorney: I object to that as slapping at the defendant over my shoulder.").

Also, the argument of the State was a reasonable response to an argument by defense counsel. In closing for the appellant, defense counsel argued that the jury "must first believe that Delvin Johnson is telling the truth ... I think that's going to be an incredible hurdle for the State to make." Defense counsel elaborated on this issue during argument. Defense counsel asked the jury whether there was any corroborative testimony for Johnson's statements:

> "The state could have called him (Scott Prunty, the individual who lent the 30.06 rifle to the appellant) at any time, to come in and say, 'No, that did not happen.'
>
> "...
>
> "Did the state bring to you his (Delvin Johnson's) landlord to prove up the fact that Delvin told the truth about even that? No!
>
> "...
>
> "If they do not call the person they listed as their witness you can infer—the law allows you to infer that that person would have something damaging to say.
>
> "...
>
> "They could not bring to you one single solitary witness to prove to you that Delvin Johnson is telling the truth about anything.
>
> "...
>
> "I don't believe that there is a man or woman alive that can say that they believe beyond a reasonable doubt—in good conscience say that—they believe beyond a reasonable doubt that Delvin Douglas Johnson, Jr., is a truthful man, and the same about Harmon Victor Sturm.
>
> "...
>
> "Would you (defense counsel addressed the jury) want to be tried on such evidence on such gossip? I trust not."

The State's attorney's argument that the State had brought the facts to the jury "against all odds" was a reasonable and justified response. *Turner v. State*, 482 S.W.2d 277 (Tex.Cr.App.1972). Even if the argument had not been invited by the defense, the appellant's improper objection to that argument preserved nothing for review. *Aliff*, supra; *Denison*, supra. Appellant's third ground of error is overruled.

In his twelfth ground of error, appellant states that the trial court erred at

---

1. Plurality opinion of this Court, by Judge Campbell.

punishment when it admitted testimony about the appellant's reputation for being peaceful and law-abiding. Specifically, appellant asserts that the State's witness, Weldon Dunlap, was permitted to testify, without first establishing that his opinion was based on current observation. Appellant claims that Dunlap's opinions were based on events too remote in time to show appellant's current reputation. Appellant cites no authority to support his argument.

■■■ We disagree with appellant. Under Article 37.071, V.A.C.C.P., the trial court has wide discretion in admitting or excluding evidence at the punishment stage of the trial, insofar as the relevance of the evidence is concerned. *Green v. State*, 587 S.W.2d 167 (Tex.Cr.App.1979), U.S. rehearing denied, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1022; *King v. State*, 657 S.W.2d 109 (Tex.Cr.App.1983). Testimony about a defendant's reputation for being peaceful and law-abiding is probative of that defendant's propensity to commit criminal acts of violence. *Ex parte Alexander*, 608 S.W.2d 928 (Tex.Cr.App.1980); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983).

It is not necessary for the State to prove that its witness based his opinion, of the appellant's reputation for being peaceful and law-abiding, upon only current observations and conversations with other members of the community. The trial court held that Dunlap's testimony was relevant and there is ample evidence in the record to show that Dunlap was a qualified reputation witness. We agree that Dunlap's testimony was admissible to show the appellant's long-standing reputation for not being peaceful and law-abiding. As in noncapital cases, the fact that appellant was a juvenile when his reputation became known to the witness won't affect the admissibility of that testimony. *Fortson v. State*, 474 S.W.2d 234 (Tex.Cr.App.1971); *Garcia v. State*, 502 S.W.2d 718 (Tex.Cr.App.1973). Appellant's twelfth ground of error is overruled.

■■■ In his eleventh ground of error, appellant states there was insufficient evidence to support an affirmative answer to Special Issue Two, which was submitted to the jury during the punishment stage of the trial pursuant to Art. 37.071, V.A.C.C.P. The State called several witnesses to testify at the punishment stage to establish the appellant's propensity to commit future acts of violence.

Initially, the State introduced evidence that the appellant committed a prior felony offense. In 1978, appellant was found guilty of burglary of a building and received eight years probation. Appellant was serving this probated sentence at the time the instant offense was committed.

Next, the State called George Schultz and Weldon Dunlap, both peace officers with the Beaumont Police Department at the time of trial. We have discussed Dunlap's testimony in the previous ground of error. Schultz served as chief of the Beaumont Police Department Criminal Investigation Division at the time of trial. Both Schultz and Dunlap testified that appellant had a bad reputation in the community for being peaceful and law-abiding.

The State next called Linda McWilliams, who related to the jury how the appellant told her in June or July of 1981, three months before the instant offense, that the murder of her husband could be arranged for the right price.

The State then called two witnesses to explain the appellant's behavior after his arrest for the instant offense. Ken Thibodeaux, a jailer employed by Jefferson County, testified that he discovered a "shank" on appellant's person during a search. Thibodeaux testified that the shank's only purpose was to cause bodily harm. The appellant warned Thibodeaux that if he took this shank, the appellant would get another one. Lastly, David Alderman, an inmate and trustee at the jail, testified that in late December of 1982, the appellant told him that if "these people keep messing with me, I stab real easy, and I'll drop one of them." After calling Alderman, the State rested.

In addition to the State's evidence admitted during the punishment stage of the

trial, the jury may also consider the circumstances of the crime itself. If those circumstances are severe enough, they can be sufficient, on their own, to support the affirmative answer to Special Issue Number Two. *Landry v. State*, 706 S.W.2d 105 (Tex.Cr.App.1985); *Holloway v. State*, 691 S.W.2d 608 (Tex.Cr.App.1984); and *O'Bryan*, supra.

In the instant case, the facts showed that the appellant coolly and calmly planned, set up, and carried out the murder of Ronnie Goode for remuneration. The calculated nature of the instant offense indicates the appellant's propensity to commit future acts of violence. *Hawkins*, supra; *O'Bryan*, supra; and *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980). The brutal facts of the appellant's murder of Ronald Goode support the jury's affirmative finding to Special Issue Two.

The State also presented evidence, during the punishment phase of the trial, of extraneous offenses committed by appellant. These extraneous offenses, committed before and after the instant offense, also support that affirmative finding. This evidence established that appellant has a propensity to commit future acts of violence. *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1980). This conclusion is not weakened by the facts that some of these offenses were not finally adjudicated, *Smith v. State*, 683 S.W.2d 393 (Tex.Cr. App.1984); that some of the offenses were non-violent in nature, *Felder v. State*, 564 S.W.2d 776 (Tex.Cr.App.1978) and *Starvaggi v. State*, 593 S.W.2d 323 (Tex.Cr.App. 1979); or that some of the offenses occurred after the commission of the instant offense, *Davis v. State*, 597 S.W.2d 358 (Tex.Cr.App.1980). Viewed together, these extraneous offenses reveal the appellant's character, before and after the instant offense, as one of lawlessness and violence.

Lastly, the State also admitted evidence that appellant had a bad reputation in the community for being peaceful and law-abiding. Considering all the evidence admitted at both stages of the trial, we agree the evidence supports the finding that appellant would commit criminal acts of violence that would constitute a continuing threat to society. Appellant's eleventh ground of error is overruled.

The judgment of the trial court is affirmed.

TEAGUE, J., concurs in the result.

CLINTON, J., dissents.

ONION, P.J., not participating.