In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-11-00043-CR

                                                ______________________________

 

 

 

                                       EX
PARTE:  ZAKEE KALEEM ABDULLAH

 

 

                                                                                                  


 

                                                                                                                            


                                      On
Appeal from the 202nd Judicial District Court

                                                             Bowie
County, Texas

                                                       Trial
Court No. 11F0008-202

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                              Memorandum
Opinion by Justice Carter

                                                                              

                                                                              








                                                      MEMORANDUM
OPINION

 

            Zakee Kaleem Abdullah has filed two
appeals, both from orders by a trial court denying the full relief sought in
his application for habeas corpus.  In
this case, he was indicted for stealing between $1,500.00 and $20,000.00 from
an individual.   In the companion case,
he was indicted for the criminal offense of holding himself out as a lawyer,
although not licensed to practice law. 
Abdullah states that bail was set at $50,000.00 on the present offense,
at $10,000.00 on the companion prosecution, and that he was also subject to a
parole hold which caused his continued incarceration.  

            In both cases, Abdullah is
representing himself.  He filed an application
for writ of habeas corpus on February 23, 2011, in which he sought habeas relief
based upon arguments that (1) a parole hold unrelated to these offenses was
violative of the supremacy clause of the United States Constitution, and (2) Tex. Code Crim. Proc. Ann. art.
17.151(i)(1) also requires his release on a personal bond because he had been
in custody for ninety days, and the State was not ready for trial.  

            His efforts to obtain habeas relief
under the parole hold are necessarily unavailing; as the State has correctly
pointed out, such an action is a post-conviction application for writ of habeas
corpus, and thus is solely within the jurisdiction and authority of the Texas Court
of Criminal Appeals. See Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon
Supp. 2010); Bd. of Pardons & Paroles
ex rel. Keene v. Court of Appeals for the Eighth Dist., 910 S.W.2d 481, 483
(Tex. Crim. App. 1995).  Thus, the trial
court did not err by denying the application in part, as the application for
habeas to attack his continued incarceration under the parole hold is solely
within the jurisdictional ambit of the Texas Court of Criminal Appeals.  

            Abdullah also contends that the
court erred by denying his applications because as an indigent, the trial
court’s order lowering bail from $60,000.00 to $25,000.00 remains a bond which
he, an indigent, cannot possibly make. 
Thus, he argues, the court should have lowered his bond to the level of
a personal recognizance bond because the amount was excessive, and because as a
defendant who has chosen to represent himself—that failing to do so makes it
impossible for him to adequately prepare his defense, in violation of federal
constitutional requisites.  

            Abdullah argues that the state
statutes and regulations conflict with his right to self-representation.  He neither specifies which statutes he
complains of, nor does he explain how such a conflict occurs—save only that he
was not released.  Abdullah argues that
the Federal Constitution necessarily controls over state statutory law, and
cites Howlett v. Rose, 496 U.S. 356
(1990), for that proposition.  That is
true as an abstract statement, but there is no authority, federal or otherwise,
which requires a defendant to be released from jail to act as his or her own
attorney more effectively, and we will not stretch current law to create such
authority.  

            Abdullah also argues that the State
failed to show that it was ready for trial within the ninety day deadline
specified by the Texas Code of Criminal Procedure, thus his release was
required.  The State does not suggest
either that the ninety days have not expired or that it was ready for trial.

            Article 17.151 of the Texas Code of
Criminal Procedure provides that if the State is not ready for trial within ninety
days after commencement of detention for a felony, the accused “must be
released either on personal bond or by reducing the amount of bail required, if
the state is not ready for trial of the criminal action.”  Tex.
Code Crim. Proc. Ann. art. 17.151, § 1 (Vernon Supp. 2010).  The trial court thus has two options:  release Abdullah on personal recognizance, or
lower his bail.   In this instance, the
trial court reduced the amount of bail required on both of the prosecutions for
which Abdullah is incarcerated.  The
requirements of the article were thus met.  Error has not been shown.

            We affirm the order of the trial
court.

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date
Submitted:          June 6, 2011    

Date
Decided:             June 7, 2011

 

Do Not
Publish           

 

             

 

 

 






tn1'
href="#_ftn1" name="_ftnref1" title="">[1]
 The State objected, and the trial court
held a hearing outside the jury’s presence in which Lester’s counsel argued,

Your
Honor, if the child -- extraneous bad acts or conduct of the child is not about
her emotional stability.  That’s not a
bad act or that’s not extraneous conduct, that’s -- we’re talking about her
emotional stability. . . .

            The whole thing about this case is
this child’s credibility.  The fact that
she has had emotional difficulties; that’s [sic] she has been hospitalized in a
mental institution -- . . . on three different occasions is not a bad act. 

 

The
State argued, “The fact that she might’ve had emotional problems as a result of
whatever it may be, shouldn’t come in whether this man committed this crime or
not.”  The court sustained the State’s
objection. 

            Lester’s counsel asked the court to
“make a Bill,” and was allowed to question the mother outside the jury’s
presence.  The testimony during the offer
of proof established that the child was twice hospitalized for emotional
difficulties, attempted to harm herself, threatened to kill herself,
“self-mutilat[ed] herself” to “deal with the situation” when the mother “put
her under house arrest,” and that the last instance of self-mutilation occurred
in March 2011.  Throughout the trial, the
child victim expressed her love for Lester, and the emotional difficulties she
experienced appeared to stem from her forced isolation from him.  

IV.       Analysis


            The record in this case demonstrated
that the child’s emotional issues manifested after her involvement with Lester
was discovered.  During direct
examination, the victim’s mother testified Lester was spending time with her
daughter during the summer and had purchased a cell phone for her daughter.[2]  The mother testified she allowed the two to
spend time with each other “until it got to a point that me and her daddy
thought something was going on . . . . When we tried to intercept, she got
aggressive and started, you know, retaliating, wanting to kill herself, stuff
like that.  That’s when we knew something
was wrong.”  The mother also added that her
daughter “was self-mutilating herself to deal with” the “house arrest” she was
placed on by her parents, and that the daughter had emotional problems “[d]ue
to this.”  

            We are unable to pinpoint an
argument as to how the evidence of this child’s emotional disturbance occurring
after the alleged acts could be used to impeach her credibility.[3]  There was no suggestion that these emotional
problems could impair her ability to recall events, would contribute to a
motive to fabricate the allegations, or would otherwise compromise the victim’s
credibility.  Thus, the trial court was
within its discretion to determine there was no logical nexus connecting the
victim’s emotional problems with her credibility.  We overrule Lester’s sole point of error.[4] 

V.        Conclusion


            We affirm the trial court’s
judgment.

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date
Submitted:          December 12, 2011

Date
Decided:             December 14, 2011

 

Do
Not Publish

 











[1]This
response was never struck from the record, and the jury was not asked to
disregard the response. 





[2]The
mother could not remember what date the cell phone had been purchased.  

 





[3]The
State alleged that Lester had committed sexual assault of a child in August and
September 2010.  Lester’s brief states
that the victim’s mother testified the child “had been admitted to two
different mental institutions, had attempted on more than one occasion to harm
herself, . . . and that this had continued from at least the Summer of 2010
until March, 2011.”  The brief
specifically argues “these mental problems had existed either prior to or
contemporaneously with the alleged crime.” 
We do not believe that the record establishes Lester’s proposition.  The support for Lester’s assertions in the
brief cites to the following portion of the offer of proof:  “Q.  I
believe you testified earlier that sometime in the summer -- and pardon me, I
don’t have the date -- sometime in the summer of 2010, she made a threat to
you, or expressed that she was going to kill herself or harm herself . . . ?  A.  Yes.
 But can I explain why?”  The mother did not give a time frame for the
emotional disturbances during her direct examination other than stating they
began after the child’s parents began to suspect the nature of the improper
relationship.  She further clarified
during the offer of proof that her daughter was “hurting herself to deal with
the situation” after
placement on “house arrest.”  

 





[4]Moreover, Lester is unable to demonstrate harm.  Substantial rights are not affected by the
erroneous admission or exclusion of evidence “if the appellate court, after
examining the record as a whole, has fair assurance that the error did not
influence the jury, or had but a slight effect.”  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (footnotes omitted).  If the evidence is generally cumulative of
other evidence introduced in the case, no harm attaches.  See
Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (holding that
to show harm, the excluded evidence must be controlling on a material issue and
not cumulative of other evidence).  The
offer of proof was generally cumulative to the mother’s testimony during direct
examination.