

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00450-CR
### NO. 02-13-00451-CR
### NO. 02-13-00452-CR
### NO. 02-13-00453-CR
### NO. 02-13-00454-CR
### NO. 02-13-00455-CR
### NO. 02-13-00456-CR
### NO. 02-13-00457-CR

JACOB CORDERO                                               APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NOS. 1288869D, 1297257D, 1297258D, 1297259D, 1297261D,
1297262D, 1297263D, 1297264D

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

A drive-by shooting occurred, multiple persons were injured, and one died. Appellant Jacob Cordero was indicted and tried in eight consolidated cases stemming from the drive-by shooting: one charge with two counts of engaging in organized crime and murder and seven charges with two counts for engaging in organized crime and aggravated assault. A jury found Cordero guilty of all sixteen offenses and assessed his punishment at ninety-nine years' confinement for each count in the murder case and at fifty years' confinement for each count in each of the other seven cases. The trial court sentenced Cordero accordingly and ordered that the sentences run concurrently.

In two issues, Cordero asserts that the trial court erred by admitting expert cell-phone-investigation testimony from United States Secret Service Agent Paul Ahner. Telephone records for the cell phone number being used by Cordero on the evening of the offenses were admitted into evidence through a sponsoring employee of AT&T. Agent Ahner then testified from the records concerning the calls made from Cordero's cell phone and the location of the cell phone towers accessed by Cordero's cell phone at or near the time of the shooting, thus identifying the location of Cordero's phone at various times on the night of the shooting. Cordero challenged at trial and challenges on appeal the "reliability of the science of locating cell phone towers and the cell phones using the towers" and the "reliability of the technique for locating the position of the cell towers and identifying the phones placing calls through those towers." The trial court conducted a hearing on the admissibility of Agent Ahner's testimony; Cordero

2

asserts that the trial court could have taken judicial notice of the validity of the scientific theories underlying the collection of cell phone to cell tower transmissions and the relevant geographic locations of cell towers if the State had provided the trial court with a relevant court decision accepting the underlying science as valid, but Cordero contends that the State failed to do so. Cordero also complains that Agent Ahner did not know whether the procedure he used to plot the locations of Cordero's phone on the night of the shooting was a scientifically accepted practice; Agent Ahner testified only that this is the procedure utilized by the United States Secret Service.

The State argues that the trial court did not abuse its discretion by admitting Agent Ahner's testimony. The State contends that Agent Ahner's testimony was admissible as lay witness testimony, points out that "cell site analysis enjoys overwhelming acceptance in the federal judiciary," and requests this court to take judicial notice of its reliability.[2] Alternatively, the State argues that, in any event, any error was harmless because Detective Cedillo offered essentially the same testimony as Agent Ahner.

We agree with the State that error, if any, in the admission of Agent Ahner's testimony was rendered harmless by the subsequent unobjected-to

_____

[2]We question whether the record created in the trial court during the reliability hearing sufficiently establishes the reliability of the underlying scientific theory and technique of cell phone cell tower tracking, and moreover, judicial notice of reliability is an inquiry better performed by our court of criminal appeals. *Cf. Emerson v. State*, 880 S.W.2d 759 (Tex. Crim. App. 1994) (performing reliability analysis of HGN test).

3

testimony of Dectective Cedillo. *See, e.g.*, *Coble v. State*, 330 S.W.3d 253, 282 & n.82 (Tex. Crim. App. 2010) (explaining general rule that error in admission of evidence may be rendered harmless by subsequent admission of same evidence without objection); *Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003) (same); *Leday v. State*, 983 S.W.2d 713, 716–21 (Tex. Crim. App. 1998) (same); *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (same). Detective Cedillo testified,

> Q. At the point or at some point, then, were you able to obtain the Defendant's cell phone records?
>
> A. Yes.
>
> Q. What did you do with the records that you obtained?
>
> A. At that time I began to identify the numbers that he was calling and more specifically focusing on the time and date of this offense.
>
> Q. Focusing in on the time and date of this offense, were you able to utilize cell tower records in providing you some additional information?
>
> A. Yes.
>
> Q. And using those records, what did you learn?
>
> A. I learned that Jacob Cordero was at or near the scene of this offense when this shooting was taking place. I also learned that minutes after that, Jacob Cordero traveled towards the east side of Fort Worth or the Poly area for several minutes and then, after that, traveled back south and later rested in Burleson.

This testimony by Dective Cedillo proves the same facts proved through Agent Aher's testimony: the location of Cordero's cell phone on the evening of the shooting both before and after the shooting. We therefore hold that, even

4

assuming that the trial court abused its discretion by admitting Agent Aher's testimony, this error was harmless based on the subsequent admission of Detective Cedillo's testimony, which was admitted without objection. *See Anderson*, 717 S.W.2d at 628 ("Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove.").

We overrule Cordero's two issues, and we affirm the trial court's judgments.


/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 28, 2015