**AFFIRMED; Opinion Filed June 14, 2019.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-01416-CR**

**No. 05-17-01417-CR**

**BERRY RAY WILLIAMS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause Nos. 16-60034-86-F and 17-00260-86-F**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Myers

Appellant Berry Ray Williams was charged in two indictments with aggravated sexual assault of a child. In each case, a jury found appellant guilty, found the enhancement allegation true, and assessed punishment at 60 years' imprisonment and a $10,000 fine. In two issues, appellant argues the trial court improperly admitted the victim's medical records and allowed a witness to testify regarding the identity of the informant. We affirm.

### DISCUSSION

### 1. State's Exhibit 3

In his first issue, appellant contends the trial court improperly admitted the victim's medical records, State's exhibit 3.

Appellant was indicted for committing aggravated sexual assault against his 11 year-old

cousin, TD, by penetrating her sexual organ with his sexual organ on one occasion and by penetrating her anus with his sexual organ on another occasion. State's exhibit 3 was medical records of TD's visits in June and July of 2016 to the Health First Fossil Creek clinic, where she was examined by physician's assistant Virginia Holmes. The medical records were offered on November 15, 2017, the third day of trial, just before Holmes' testimony. At the time those records were offered, the State noted that they had been on file with the court without an objection from the defense for several months.[1] When the exhibit was offered, the following exchange occurred:

> [DEFENSE COUNSEL]: Judge, on the—on the affidavit, it's—it's written wrong. It says that it's the records for Berry, but it's actually the records for [the victim] and so I don't know if she can correct that and clean that up.
>
> [STATE]: Your Honor, they've been on file without an objection for, I think, several months now.
>
> THE COURT: Yeah. I don't think that really goes to the admissibility. I just want to make sure it's clear to the jury, I think is what you're saying, right?
>
> [DEFENSE COUNSEL]: Uh-huh.
>
> [STATE]: Sure.
>
> THE COURT: So—
>
> [STATE]: I'll ask her questions to clarify it, Your Honor.
>
> [DEFENSE COUNSEL]: I mean, if she's got a witness here, she can just—
>
> THE COURT: Oh, you got her here too?
>
> [STATE]: It's not the custodian but it's—
>
> THE COURT: Okay. Let's just make sure.
>
> [STATE]: —the treating—
>
> (Open court.)
>
> THE COURT: Other than that, [defense counsel]?
>
> [DEFENSE COUNSEL]: No, I have no objection, Judge.

---

[1] The records were file-marked August 17, 2017, and there is no indication in the record of any written objection from the defense.

THE COURT: Okay. State's Exhibit 3?

[STATE]: 3 and—

THE COURT: 3A?

[STATE]: For all purposes.

THE COURT: State's Exhibit 3 will be admitted for all purposes, 3A for record purposes only.

[STATE]: State calls Virginia Holmes.

(Witness was sworn.)

In order to preserve error for appellate review, a timely and specific objection is necessary. *See* TEX. R. APP. P. 33.1(a)(1)(A). Thus, the objecting party must let the trial judge know what he wants, why he thinks he is entitled to it, and do so clearly enough for the judge to understand him at a time when the judge may do something about it. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). "[W]hen the defendant affirmatively asserts during trial he has 'no objection' to the admission of the complained of evidence, he waives any error in the admission of the evidence despite the pre-trial ruling." *Ex Parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (quoting *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986) (en banc)); *see also Dean v. State*, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988). Additionally, an error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Rivera–Reyes v. State*, 252 S.W.3d 781, 787 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986) (en banc) and *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984) (en banc)).

In this case, the record shows appellant failed to preserve any error in the admission of the exhibit. Defense counsel asked the trial court a question about the sufficiency of the affidavit, and the court and the parties agreed it should be clarified for the jury. The State agreed to clear up the matter with the witness. Not only did defense counsel fail to make any hearsay objection before

the exhibit was admitted, but she affirmatively told the trial court the defense had no objection to it. Accordingly, any potential error in its admission was not preserved for appellate review. We overrule appellant's first issue.

## 2. Virginia Holmes' Testimony

In his second issue, appellant argues the trial court improperly allowed a witness, Virginia Holmes, to testify about who committed the offense against the victim.

The record shows that after explaining her education and qualifications, Holmes testified regarding what steps she would take in determining whether a patient might have a sexually transmitted disease. Turning to the medical records in State's exhibit 3, Holmes testified that TD's first visit to the clinic on June 14, 2016, was scheduled by TD's grandmother because of vaginal discharge the child had been experiencing. Holmes recalled that TD was "[v]ery withdrawn," she "wouldn't make eye contact," and she "looked down the whole time." TD's grandmother spoke for her at the beginning of the visit because TD "didn't want to speak."

Holmes testified that she conducted an examination of TD at the grandmother's insistence "because certainly at the age of 11, it would be unusual for it to be anything other than maybe yeast or a bacterial infection." Holmes took swabs and tested for yeast and bacterial vaginosis. Holmes did not expect to find a sexually transmitted disease because she had asked TD in her questioning whether she was sexually active, and TD said no. But the test Holmes ordered also tested for trichomonas, a fairly common sexually transmitted disease. When the test results came back positive for trichomonas, Holmes was shocked because TD was only 11 years and 6 months of age, and because she had denied any sexual activity.

Holmes explained what happened when she went over the test results with TD and her grandmother:

A. We sat down. I explained to the godmother and to the patient that the test showed positive for trichomonas and negative for the two things we thought would show

–4–

positive. I then questioned the patient more thoroughly. If you are not sexually active, how is it that you have a sexually contracted disease?

Q. How did [TD] appear when you asked her about sexual activity?

A. She remained very quiet. She had her head down. She was very hesitant to talk. I had to probe her at least once or twice more to, please—I compelled her to please tell me what has happened that you have a sexually contracted disease.

Q. Why were you asking that question?

A. I knew she lied to me about being sexually active. My concern was that maybe someone had done something to her inappropriately.

Q. What questions did you ask?

A. I asked her had anyone touched her in an inappropriate way or forced themselves upon her in a sexual manner.

Q. When you asked her that, what was her demeanor like?

A. She was very upset. She began to cry and she told me yes.

Q. When she said yes, that someone had done something to her, what did you do next?

A. I asked her to look at me directly in the face and tell me if she gave any form of consent for someone to do that to her. She said no.

[DEFENSE COUNSEL]: Objection, Your Honor, hearsay.

THE COURT: Response?

[STATE]: Your Honor, this is not hearsay. It's under 803(4), statements made for the purpose of medical diagnosis or treatment.

[DEFENSE COUNSEL]: Judge, at this time, we will stand by the hearsay objection. There are—she's trying to get possible outcry statements in through an additional witness.

THE COURT: I'll overrule at this time. If it goes any further, I'll allow you to renew your objection. I believe the exception applies.

Asked if it was medically important for her to ask these questions, Holmes testified that she needed to do so for legal reasons:  TD was underage and if someone inappropriately touched her the matter would have to be reported to Child Protective Services (CPS).  The State then asked Holmes if TD told her who penetrated her vaginally without her consent, and Holmes said yes.  At

–5–

that point, defense counsel objected based on hearsay, arguing "[t]hat's not for medical purpose," and the trial court called counsel up to the bench and held a hearing out of the jury's presence. During that hearing, the State argued in part that the matter was already in evidence in the medical records, and defense counsel responded that she was "going to go ahead and just make an objection so that we can redact and amend that information." The court expressed concern that "[i]t seems to be we're getting beyond the purposes of medical diagnosis" and that it did not "see what that would have to do with diagnosis." The State pointed out that Holmes was listed as an outcry witness and that they could "always do this outside the presence of the jury if you want to determine that it's an outcry statement, but since it's already been admitted in evidence through the medical records, I don't think this is a timely objection." The defense noted that "[t]he only person who came as an outcry witness was Tracy Ramirez," the forensic interviewer at the Kaufman County Children's Advocacy Center, and that the State did not bring Holmes forward as an outcry witness. The trial court agreed there had been no outcry hearing on Holmes, "but that doesn't change the fact that, I mean, it's been admitted." The State reiterated that it was just asking Holmes to speak to records that had already been admitted into evidence. The court eventually went off the record and a brief recess was taken, after which it overruled the hearsay objection.

When Holmes' testimony resumed, she testified without further objection that TD said her 18 year-old cousin, appellant, had penetrated her vaginally. Holmes explained that she gathered additional information about the date and location of the assault because she was required by law to report the matter to CPS. Holmes testified that after TD told her about the assault, she seemed better able to make eye contact and discuss what had happened. Holmes wrote TD a prescription for Flagyl, a prescription antibiotic typically used to treat trichomonas. Holmes determined that since TD tested positive for a sexually transmitted disease (STD), they should screen for other possible STDs. They ordered blood work to check TD for hepatitis, HIV, syphilis, and herpes.

All of these test results were negative. Asked how trichomonas could be spread, Holmes testified as follows:

> It can be spread vagina to vagina. It can be spread penis to vagina because it's usually—if we're talking about a male-to-female situation, it's carried within the urethra of the male and it would have to make contact with the inside of the vagina to become a positive contracted illness.

Holmes also testified that trichomonas could not be spread through anal or oral penetration; it would have to be from either another vagina or from a penis inside TD's vagina. The only way trichomonas could pass from a male penis to a female's vagina would be through vaginal intercourse.

In this case, even if we assume for the sake of argument that appellant's hearsay objection to Holmes's testimony was timely, the preserved error would have been harmless. As we noted before, the admission of inadmissible evidence is harmless error if other evidence proving the same fact has been admitted elsewhere without objection. *See Rivera–Reyes*, 252 S.W.3d at 787. The same information about which Holmes testified was included in State's exhibit 3, which was admitted without timely objection from the defense, and TD later testified that she told Holmes about appellant assaulting her, and this testimony was also without objection. Accordingly, the error in this instance, if any, was harmless. *See* TEX. R. APP. P. 44.2(b).

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. 47.2(b)
171416F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BERRY RAY WILLIAMS, Appellant

No. 05-17-01416-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 16-60034-86-F.
Opinion delivered by Justice Myers.
Justices Osborne and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 14th day of June, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BERRY RAY WILLIAMS, Appellant

No. 05-17-01417-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 17-00260-86-F.
Opinion delivered by Justice Myers.
Justices Osborne and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 14th day of June, 2019.