Pedro DE LA ROSA, a/k/a Pedro La Rosa, Appellant,

v.

The STATE of Texas, Appellee.

Orlando MEYERS, a/k/a, Orlando Davis, a/k/a Orlando Richards, a/k/a Cisco, Appellant,

v.

The STATE of Texas, Appellee.

Javier URRUNAGA, a/k/a Javier Corea, a/k/a Jose Gonzales, a/k/a Panamanian Joe, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 3–87–162–CR, 3–87–191–CR and 3–87–198–CR.

Court of Appeals of Texas, Austin.

April 12, 1989.

Gerald M. Brown, Carroll, Brown & Hibbs, P.C., Temple, for Pedro De La Rosa.

Arthur C. Eads, Dist. Atty., Charlie Strauss, Asst. Dist. Atty., Belton, for the State.

Troy C. Hurley, Odom & Hurley, Temple, for Orlando Meyers.

George Long, Killeen, for Javier Urrunaga.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

ON MOTION FOR REHEARING

JONES, Justice.

The opinion and judgments handed down by this Court on February 22, 1989, are withdrawn and this opinion is filed in place of the earlier one.

Appellants were convicted by a jury of criminal conspiracy to deliver cocaine in the aggravated amount of over 400 grams.

Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 4.02(b), 4.03(c) & (d), 4.011 (Supp.1989); Tex.Pen.Code Ann. § 15.02 (1974). The court assessed punishment at confinement for 20 years for appellant Pedro De La Rosa and 35 years for appellants Orlando Meyers and Javier Urrunaga. We will affirm the judgments of conviction.

All three appellants attack the sufficiency of the evidence to support the convictions, although their primary challenge appears to be to the sufficiency of the non-accomplice evidence to show compliance with Tex.Code Cr.P.Ann. art. 38.14 (1979). Accordingly, we are obliged first to determine whether the corroborative evidence alone meets the requirements of article 38.14, and, if so, whether that evidence together with the accomplice testimony meets the general sufficiency of evidence standard. *See, e.g., Martinez v. State,* 749 S.W.2d 556, 558 (Tex.App.1988, no pet.). In addition, De La Rosa and Meyers each have one evidentiary point of error.

Section 15.02 of the Penal Code provides as follows:

(a) A person commits criminal conspiracy if, with intent that a felony be committed:

(1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

(2) he or one or more of them performs an overt act in pursuance of the agreement.

(b) An agreement constituting a conspiracy may be inferred from acts of the parties.

Article 38.14 of the Code of Criminal Procedure provides as follows:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

The established rules for determining the sufficiency of corroborative evidence to satisfy article 38.14 include the following:

1. The test to determine the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is inculpatory evidence which tends to connect the accused with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not.

2. The corroborative evidence need not directly link the accused to the crime or be sufficient in itself to establish guilt.

3. All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary.

4. The corroborative evidence may be circumstantial or direct.

5. The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test.

6. Apparently insignificant circumstances sometimes afford satisfactory evidence of guilt and corroboration of the accomplice witness.

7. No precise rule can be laid down as to the amount of evidence that is requisite to corroborate the testimony of an accomplice, so as to sustain a conviction of the accused; therefore, each case must be considered on its own facts and circumstances.

8. Evidence merely showing the commission of an offense is not sufficient alone to corroborate an accomplice witness, but it is a factor to be considered along with other possible factors.

9. The same is true of evidence merely showing that the accused was an associate of the accomplice, or that they were together shortly before or after the commission of the crime.

10. The same is true of evidence which merely goes to show motive or opportunity of the accused to commit the crime.

*See Reed v. State,* 744 S.W.2d 112 (Tex.Cr. App.1988); *May v. State,* 738 S.W.2d 261 (Tex.Cr.App.1987); *Gamez v. State,* 737 S.W.2d 315 (Tex.Cr.App.1987); *Gardner v. State,* 730 S.W.2d 675 (Tex.Cr.App.1987); *Losada v. State,* 721 S.W.2d 305 (Tex.Cr. App.1986); *Mitchell v. State,* 650 S.W.2d 801 (Tex.Cr.App.1983); *Paulus v. State,* 633 S.W.2d 827 (Tex.Cr.App.1981).

The indictments charged seventeen persons as conspirators, and named ten more as unindicted co-conspirators. At the trial of these appellants, the State presented testimony from thirty-one witnesses, including five accomplices. Generally, the testimony related to an ostensibly significant cocaine trade in Killeen, Texas, from approximately August 1986 to approximately May 1987. Much of it related to the activities of co-conspirators who are not parties to this appeal. We will not attempt to summarize the testimony of all witnesses, but will cull out the evidence relating to each appellant individually, considering them one at a time.

### Javier Urrunaga

■ The non-accomplice testimony that related to appellant Urrunaga may be outlined as follows:

Urrunaga had many aliases, including Javier Edgardo, Edgardo Corea, Javier Corea, and Jose Gonzales. His real name apparently is Javier Edgardo Urrunaga.

Urrunaga was one of five people, including Orlando Meyers and Vincent Paul Smith, an individual associated with cocaine, who were arrested at 905 Stetson on August 13, 1986, for possession of cocaine. Urrunaga was not charged with an offense, however, although cocaine was found on the premises and another co-conspirator, Lionel Callender, was charged.

In a search of Urrunaga's residence at 305 Elm Road, lot D–37, on April 19, 1987, police found and seized the following items:

an envelope on which appeared the name of Gabriel Serrano, a co-conspirator and known cocaine dealer;

an envelope addressed to Jose Garcia, 305 Elm Rd., lot 37;

cash receipts issued to Edgardo Corea;

a cash receipt in the name of Jose Gonzales;

a rental agreement (dated April 1, 1987), receipt, and Texas Power & Light connection receipt (dated March 26, 1987) for 209 West Green St. # 4, all in the name of Jose Cruz;

beeper # 6285605.

Undercover officer Clarence Joris bought cocaine at 209 West Green # 4 on April 13, 1987. Joris attempted to purchase cocaine again at 209 West Green # 4 on April 15, 1987, but was recognized as a police officer and had to flee the scene before the transaction was completed.

The lease for 2810 Tucker # 439 was in the name of Javier Edgardo; the lease for 2810 Tucker # 467 was in the name of Jacqueline Urrunaga.

A police informant made two controlled buys of cocaine at apartment 439 in an apartment complex in the 2800 block of Tucker Street on December 5 and 9, 1986. Gabriel Serrano arrived at the apartment during the first buy.

Urrunaga was arrested in his car on April 19, 1987. In a search of the car, police found cocaine. The car had expired dealer's license plates *over* expired Georgia license plates. Also in the car were Alberto Marshall, a co-conspirator and known cocaine dealer, and Jacqueline Urrunaga. Urrunaga identified himself to the arresting officer as Jose Gonzales. He was unruly and nervous, and generally acted "very unusual." The others in the car were not arrested.

The testimony outlined above shows Urrunaga to be a person who had many aliases; who had been present in a location where cocaine was sold; who had been associated with cocaine since at least mid–1986; who associated with known cocaine sellers including numerous co-conspirators; who rented two different apartments in which he did not live, but from which cocaine was sold; and who was himself arrested for possession of cocaine in a car with false license plates.

This evidence tends to show that Urrunaga was acting with others in selling co-

caine. That by itself is sufficient to connect him with a conspiracy. *See Morgan v. State*, 519 S.W.2d 449 (Tex.Cr.App.1975). On the basis of the rules set forth above, we hold that the evidence is sufficient to satisfy the requirements of article 38.14 as "tending to connect" Urrunaga with the offense committed.

The general sufficiency of evidence standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt; or, stated another way, whether the evidence, viewed in that light, excludes every reasonable hypothesis other than the guilt of the accused. *Martin v. State*, 753 S.W.2d 384 (Tex.Cr.App.1988). We have reviewed the entire record and, considering the accomplice and non-accomplice testimony together, conclude there is ample evidence to support the verdict. Urrunaga's point of error is overruled.

### *Orlando Meyers*

The non-accomplice testimony that related to appellant Meyers may be outlined as follows:

Orlando Meyers used many aliases, including Gabriel Smith, Rolando Richards, Orlandito Davis, Valentino Richards, Orlando Richards, Rolando Meyers, Michael Meyers, and Cisco.

Meyers was one of five people, including Javier Urrunaga and Vincent Paul Smith, an individual associated with cocaine, who were arrested at 905 Stetson on August 13, 1986, for possession of cocaine. No charges were filed against Meyers, however, although cocaine was found on the premises and another co-conspirator, Lionel Callender, was charged.

A rental application, lease, and security statement for 905 Stetson, dated May 28, 1986, were in the name of Rolando Richards. The application form lists 2106 Silver Hill Drive as the applicant's current address.

In a search of Meyers's residence at 809 Haynes on April 25, 1987, police found and seized the following items:

a safe with $17,772 in it, including all five $20 bills used by Officer Joris to make a controlled buy of cocaine at 106–A Hoover St. on April 2, 1987;

a small amount of marijuana;

an envelope addressed to Orlando Meyers at 2106 Silver Hill Dr.;

a beeper;

gold jewelry;

a warning regarding "crack";

a contract for 809 Haynes in the name of Orlando and Carolyn Meyers;

a TEC ID card in the name of Orlando Richards;

a social security card in the name of Orlando Meyers;

a paper napkin containing scribbled "drug notes", i.e., notes apparently relating to drug transactions.

This testimony shows Meyers to be a person who had many aliases; who had been associated with cocaine since at least mid–1986; who associated with numerous co-conspirators; who was present at a location where cocaine was found; who rented an apartment in which he did not live, but in which cocaine was found; who had in his residence drug notes; and who had in his residence a large amount of cash ($17,772), which included bills that were identified as having been recently used in a "controlled buy" of cocaine.

This evidence tends to show that Meyers was acting with others in selling cocaine, thus connecting him with a conspiracy. *See Morgan*, 519 S.W.2d 449. On the basis of the rules set forth above, we hold that the evidence is sufficient to satisfy the requirements of article 38.14 as tending to connect Meyers with the offense committed. Having reviewed the entire record, both accomplice and non-accomplice testimony, we also conclude that there is ample evidence to meet the general sufficiency of evidence standard set forth in *Martin*, 753 S.W.2d 384.

Meyers also has a point of error complaining of the admission into evidence of a pawn receipt bearing the name of "Valentino Richards," one of Meyers's aliases. The receipt was photographed and seized when

Meyers was arrested. Meyers complains that both the receipt and the photograph of it admitted separately were the fruits of an improper warrantless search and were offered into evidence "to show another of Appellant's alleged aliases in an effort to prejudice the jury against him." In addition to the receipt itself, however, there was direct testimony from an officer that one of Meyers's aliases was Valentino Richards. The receipt was, therefore, merely cumulative of other evidence received without objection. Accordingly, without deciding the question of the admissibility of the documents, but assuming they were inadmissible, we determine beyond a reasonable doubt that their admission into evidence made no contribution to the conviction or punishment of Meyers. Tex.R.App.P.Ann. 81(b)(2) (Pamph.1989). Meyers's points of error are overruled.

### Pedro De La Rosa

■ The non-accomplice testimony relating to appellant De La Rosa may be outlined as follows:

In a search of the car in which co-conspirator Roxanne Barker was riding when she was arrested on April 10, 1987, a Midas receipt (for a different car) with Pedro De La Rosa's name on it was found.

In a search on April 13, 1987, of an apartment rented by co-conspirator Nixia McKinney at 1710 North 46th Street # 1113, officers found two envelopes addressed to Pedro De La Rosa at that address.

Officer Clarence Joris encountered De La Rosa and co-conspirator Alberto Marshall outside the apartment at 209 West Green # 4 on April 13, 1987, when he arrived to make a controlled buy of cocaine. Marshall took him inside and sold him cocaine, while De La Rosa stayed outside until Joris was leaving. De La Rosa did not speak to Joris or anyone else.

Joris encountered De La Rosa again at 209 West Green # 4 on April 15, 1987, during an aborted cocaine buy. Joris knocked on the door and De La Rosa answered the door and waved him in but did not speak to him. De La Rosa called for

someone else, who recognized Joris as a police officer. Joris testified that as he rushed out the door, De La Rosa looked "basically dumbfounded. He didn't know what was going on." Joris's impression was that De La Rosa was the look-out man.

De La Rosa was seen with someone named Israel at River Oaks Apartments # 1605 on April 23, 1987, by a truant officer who was looking for someone else. No controlled substances were tied to that person or that address.

In a search of co-conspirator Margarita Hinds's purse after her arrest on April 28, 1987, officers found a pawn shop ticket bearing the name of "Pedro La Rosa."

Officer Baldwin saw De La Rosa in a parking lot of a bus depot one night, and speculated that De La Rosa had been following him.

This evidence shows De La Rosa to be a person who was associated with some of the co-conspirators in early 1987; and was present where cocaine was sold in April 1987, apparently participating in the process as a look-out man.

While this is considerably less evidence than exists as to the other two appellants, we cannot say that it does not "tend to connect" De La Rosa with the offense committed. We remain unconvinced that the non-accomplice testimony tends to connect De La Rosa with a conspiracy to deliver *more than 400 grams* of cocaine. However, the Court of Criminal Appeals has ruled on more than one occasion that in a capital murder case the accomplice witness testimony need not be corroborated as to the aggravating element which elevates murder to capital murder. *See May v. State*, 738 S.W.2d 261, 266 (Tex.Cr.App. 1987); *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Cr.App.1986); *Anderson v. State*, 717 S.W.2d 622, 631 (Tex.Cr.App.1986); *Romero v. State*, 716 S.W.2d 519, 520 (Tex. Cr.App.1986); *see also Sheffield v. State*, 371 S.W.2d 49, 53 (Tex.Cr.App.1962) ("Every constituent element of the offense as testified to by the accomplice need not be corroborated."). Moreover, we may not ap-

ply a different rule merely because this is not a capital murder case:

[T]he testimony of an accomplice witness in a capital murder case need not be corroborated on the element which elevated the murder to a capital murder. *Holladay v. State,* 709 S.W.2d 194 (Tex. Cr.App.1986). There is only one rule for the corroboration of the testimony of an accomplice witness. Art. 38.14, V.A.C. C.P. This rule applies to all crimes, including capital murder.

*Anderson,* 717 S.W.2d at 631. Accordingly, on the basis of the rules set forth above, we hold that the evidence is sufficient to satisfy the requirements of article 38.14 as tending to connect De La Rosa with the offense committed.

Having reviewed the entire record, both accomplice and non-accomplice testimony, we also conclude that as to De La Rosa there is enough evidence to meet the general sufficiency of evidence standard set forth in *Martin,* 753 S.W.2d 384.

De La Rosa also has a point of error complaining of the trial court's admission into evidence of testimony and documents regarding the contents of a safe deposit box maintained in the names of Johnny Ricardo Thompson Riddell and Margarita Hinds. However, the record contains no evidence whatsoever that De La Rosa had "standing" to challenge the search of the safe deposit box or the seizure of the items taken from it. *See Calloway v. State,* 743 S.W.2d 645 (Tex.Cr.App.1988); *Wilson v. State,* 692 S.W.2d 661 (Tex.Cr.App.1984). Accordingly, De La Rosa has not carried his burden as to that issue. De La Rosa's points of error are overruled.

For the reasons stated above, we affirm the judgments of conviction as to all these appellants.

CARROLL, J., not participating.