IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-93-286-CR




STEVEN ARMENDARIZ,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 0920296, HONORABLE JON N. WISSER, JUDGE PRESIDING


 





PER CURIAM

 A jury found appellant guilty of aggravated robbery and assessed punishment at
imprisonment for thirty years. Tex. Penal Code Ann. § 29.03 (West Supp. 1994). Appellant's
only point of error is that the evidence does not adequately corroborate the testimony of the
accomplice witnesses. Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979).

 At about 7:00 p.m. on January 16, 1992, Ernestine Galindo drove into the garage
of her house at 2911 Bowman in Austin. As she was getting her things together, there was a rap
on the car window beside her head. She turned to find a silver pistol pointed at her. The man
holding the pistol, identified at trial as Malcolm Harris, motioned for Galindo to open her car
door. When she did, Harris demanded that she give him her jewelry. Galindo gave Harris a gold
wedding band, a diamond cluster ring, and two diamond solitaire rings with stones weighing,
according to Galindo, four and seven carats. Harris also stole a diamond bracelet and a woman's
Rolex President watch with ten diamonds on the face. The watch was a gift from Galindo's
husband, and had an inscription on the back. Harris fled on foot after pushing Galindo to the
garage floor. At the time of appellant's trial, Galindo had recovered all of her stolen jewelry.

 Harris testified that appellant approached him in November or December 1991 and
proposed that they rob Galindo, whom appellant called his "auntie." (1) Appellant told Harris that
Galindo had "two big nice diamonds that he wanted." On the night of the robbery, appellant and
Harris waited in appellant's white Jeep Cherokee outside Galindo's office on East Sixth Street. 
When they saw Galindo leave in her car, the two men drove ahead to her house. Appellant
parked in a parking lot across the street from Galindo's residence. Appellant waited there while
Harris committed the robbery. 

 On the night in question, Kevin Schmitz was employed as the assistant manager
of the Tarry House, a private club at 3006 Bowman in Austin. Schmitz testified that sometime
after 6:00 p.m., he noticed a white sport-utility vehicle, which could have been a Jeep Cherokee,
in the club's parking lot. His attention was drawn to the vehicle because it was parked in the far
corner of the lot even though there were many spaces closer to the door. Schmitz later saw this
vehicle rapidly drive away.

 Robert Hernandez was the manager of an Austin jewelry store. Hernandez and
appellant were acquaintances, and appellant had mentioned Galindo's diamonds to Hernandez in
early 1991. Appellant visited Hernandez's house at around 8:00 p.m. on January 16, 1992. 
Appellant showed Hernandez two diamond solitaire rings, a diamond cluster ring, and a woman's
Rolex watch. Appellant told Hernandez that this jewelry was Galindo's. Hernandez told
appellant that he wanted to take the rings to his store to examine the stones more closely. The two
men arrived at the store at 9:00 p.m., as employees were preparing to close. In the store office,
Hernandez removed the two large diamonds from their mountings, weighed them (one was 7.3
carats, the other 3.3 carats), and examined them with a gem scope. Hernandez then returned the
stones and mounts to appellant. Hernandez agreed to purchase the bracelet and cluster ring for
$1000. Hernandez also agreed to show the two large diamonds to a diamond dealer the following
day.

 Tracie Adams and Christine Carlson were the employees on duty at the jewelry
store on the night of January 16, 1992. They both testified to Hernandez's visit to the store as
they were closing, and identified appellant as the man with him. Carlson saw Hernandez remove
the gem scope from the jeweler's window and take it with him to the office. When appellant and
Hernandez left the store, Hernandez was carrying a small bag.

 Larry Myers, an Austin diamond broker, testified that Hernandez came to his office
on the morning of January 17, 1992. He was accompanied by appellant, whom Myers had never
met. While appellant waited in an anteroom, Hernandez showed Myers two large diamonds, one
weighing over seven carats and the other weighing over three carats. Hernandez told Myers that
the diamonds should not be resold in Austin. Myers understood this to mean that the gems were
stolen. Myers refused to purchase the stones and later called several other people in the trade to
warn them that Hernandez was attempting to sell stolen diamonds. Hernandez and appellant drove
away from Myers's office in a white Jeep Cherokee. Myers saw the two diamonds a week later
at the Austin police department.

 Tom Hoskins, an Austin jeweler, testified that he received a telephone call from
appellant on January 17, 1992. As a result of this call, Hoskins met appellant at an automobile
dealership where Hoskins had other business to transact. At this meeting, appellant, who was
alone in a white Jeep Cherokee, showed Hoskins a woman's Rolex President watch with diamonds
on the face. The watch had an inscription on the back which Hoskins did not read. Appellant
also showed Hoskins a large diamond Hoskins estimated to weigh between four and six carats. 
Hoskins agreed to meet appellant at his office later that day to examine the jewelry more closely. 
Before this meeting could take place, Hoskins received a telephone call from Myers, which
prompted Hoskins to call the police. At the suggestion of the police, Hoskins contacted appellant
and arranged to meet him at an Austin restaurant. Hoskins did not go to this meeting, but sent
police officers in his place.

 The district court instructed the jury that Malcolm Harris and Robert Hernandez
were accomplices as a matter of law. A conviction cannot be had on the testimony of an
accomplice unless that testimony is corroborated by other evidence tending to connect the
defendant to the offense, and the corroboration is not sufficient if it merely shows the commission
of the offense. Art. 38.14. To determine if the corroborating evidence is sufficient, the
accomplice testimony must be excluded from consideration and the remaining evidence must be
examined to ascertain whether it independently tends to connect the defendant to the offense. Leal
v. State, 782 S.W.2d 844, 851 (Tex. Crim. App. 1989). The corroborative evidence may be
circumstantial or direct, and need not directly link the defendant to the crime or be sufficient in
itself to establish guilt. De La Rosa v. State, 771 S.W.2d 170, 171 (Tex. App.--Austin 1989, no
pet.). Evidence that the accused was an associate of the accomplice, or that they were together
shortly before or after the crime, is a factor that may be considered but is not alone sufficient to
corroborate the accomplice. Id. It is the cumulative weight of the incriminating nonaccomplice
evidence that supplies the test for corroboration. Id.

 Applying these principles to the facts in this cause, we conclude that the accomplice
testimony was adequately corroborated. On the day after the robbery, appellant was driving a
white Jeep Cherokee. A vehicle matching this description was seen parked less than a block away
from the Galindo residence at the approximate time of the robbery. The vehicle was later seen
leaving this location at a high rate of speed. Appellant was seen at the jewelry store in the
company of the accomplice Hernandez two hours after the robbery. The circumstances suggest
that Hernandez used the gem scope at the store to examine the item or items he was carrying in
a bag. The day after the robbery, appellant accompanied Hernandez to Myers's office, where
Hernandez attempted to sell two large diamonds matching the description of those in Galindo's
stolen solitaire rings. That same day, appellant, this time alone, tried to sell to Hoskins a watch
matching the description of the one stolen from Galindo, as well as a large diamond of the
approximate size of the two stolen solitaires. See Gill v. State, 873 S.W.2d 45, 49 (Tex. Crim.
App. 1994) (defendant's possession of recently stolen property is corroborative of accomplice
testimony, even if possession is not exclusive). Although there was no direct testimony to this
effect, the evidence suggests that the stolen jewelry was recovered by the police when appellant
was arrested. 

 We hold that the cumulative weight of the nonaccomplice evidence does more than
merely cast suspicion on appellant, but instead tends to connect him to the charged offense. As
such, the evidence is sufficient to corroborate the accomplice testimony. The evidence as a whole,
including that of the two accomplices, is sufficient to sustain appellant's conviction as a party to
the robbery. The point of error is overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: July 6, 1994

Do Not Publish
1. Galindo testified that appellant is her cousin's step-son. She had met him only once, a year
before the offense. She was wearing her jewelry at the time of this meeting.