

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00041-CR

_____

RYAN LEE DANIEL, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 90th District Court
Young County, Texas
Trial Court No. 10801

Before Sudderth, C.J.; Pittman and Birdwell, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

A jury convicted Appellant Ryan Lee Daniel of continuous sexual abuse of a child, the complainant Jane Doe 16-6, and assessed his punishment at life imprisonment.[1] The trial court sentenced him accordingly. In three issues, Appellant contends that the forensic interviewer was not the proper outcry witness and that the trial court reversibly erred by allowing questions regarding the credibility of Jane's allegations and Appellant's denials and by admitting the witnesses' answers to those questions. We hold (1) that the trial court did not abuse its discretion by designating the forensic interviewer as the outcry witness and (2) that Appellant did not preserve his remaining evidentiary complaints, obviating the need for a harm analysis. We therefore affirm the trial court's judgment.

## DISCUSSION

### I.      Forensic Interviewer Kayla Voorhees Was the Proper Outcry Witness.[2]

In his first issue, Appellant contends that the trial court erred by designating forensic interviewer Kayla Voorhees as the outcry witness. *See* Tex. Code Crim. Proc. Ann. art. 38.072.

---

[1]We use aliases to refer to the complainant and her family members. *See* Tex. R. App. P. 9.10(a); *Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *Wilson v. State*, 442 S.W.3d 779, 782 n.1 (Tex. App.—Fort Worth 2014, pet. ref'd).

[2]Because Appellant does not challenge the sufficiency of the evidence, we omit a statement of facts.

**A. The First Adult Jane Communicated With About Appellant's Touching Her Was Her Stepmother.**

While twelve-year-old Jane was staying out of town with her father during the summer of 2016, she told her friend and stepsister—both minors—that Appellant, Jane's stepfather, had been sexually abusing her in her Young County home. Those girls, in turn, told Jane's stepmother (Stepmother), who immediately asked Jane about it. Jane's father and Stepmother reported Appellant's alleged sexual abuse of Jane to their local police department and to Child Protective Services, and after Jane returned to her Young County home, she was forensically interviewed by Kayla Voorhees, who was then the Advocacy Center Program Manager and Forensic Interviewer at the local child advocacy center.

**B. The State Gave Notice That It Intended to Treat Forensic Interviewer Voorhees as the Outcry Witness.**

The State's written notice of intent to use Voorhees as the outcry witness indicates that Jane told Voorhees that:

- When Jane was around eleven years old, Appellant licked and squeezed her breasts;

- When Jane was almost twelve years old, Appellant touched her genitals and penetrated them with his fingers and tongue;

- These acts happened at night in Jane's bedroom; and

- Appellant "generally did these same acts probably two times a week during the period in question."

**C.    Jane Responded to Stepmother's Questions About Appellant's Touching Her, but Only by Moving Her Head and Hands.**

At the Article 38.072 hearing, Stepmother testified that when she questioned Jane, the child "could not verbally speak.  She had all but shut down, but she could nod her head 'yes' and nod her head 'no,' and she used hand motions to kind of elaborate what was going on" in response to Stepmother's questions.  Stepmother admitted that Jane never verbally told her that Appellant committed "any certain type of offense" against her.  On cross-examination by defense counsel, the following exchange occurred:

> Q.    And these questions you're asking her, you're doing all the talking, correct?
>
> A.    Yes, ma'am.
>
> Q.    You're putting words into her mouth basically because she couldn't talk; is that correct?
>
> A.    I would say "no."  I mean, I was basically asking her generalized questions and she was answering them.
>
> . . . .
>
> Q.    You were asking her very specific questions about a sexual abuse allegation; is that correct?
>
> A.    Yes, ma'am.
>
> Q.    And you were asking her to give you answers either nodding "yes" or "no," correct?  There was no in between; is that correct?
>
> A.    Yes, ma'am.
>
> . . . .

4

Q.          . . . .  Did you ask her did her father[3] do something to her; is that correct?

A.          I asked her if he was touching her, yes.

. . . .

Q.          (BY [Defense Counsel]) Did you specifically ask her if her stepfather had touched her vagina?

A.          No.

Q.          So how did she respond that he touched her?

A.          With hand motions.

Q.          Okay.  And did she respond specifically that he touched her on her vagina?

A.          With her hand motions, yes, ma'am.

Q.          And how did she respond that he touched her on her vagina with hand motions?

A.          She motioned around her genitalia to show that that's where he had touched her.

Q.          And did she specifically place her hands on her vagina?

A.          No.  She just motioned around it.

Q.          So anywhere from the midstomach to the knee, is that what she motioned?

A.          Well, it was more generally right here.  I took it as the genitalia area.

---

[3]It is clear from the context that the "father" referred to here was Appellant, who had raised Jane and whom she called "Daddy."

Q.        And did you specifically ask her whether or not this was the clothes or below the clothes?

A.        I asked both, and she said it was both.

Q.        And she verbalized that, or what did she say?

A.        She nodded her head.

Q.        She did verbalize, or she did acknowledge, that it was both under and above the clothes; is that correct?

A.        Yes, ma'am.

Q.        What else did you question her about?

A.        I asked her, if it happened, how often it happened.

Q.        And did she verbalize an answer?

A.        She could not verbalize an answer at all.

Q.        Did you further question her on anything else?

A.        I asked her if it happened daily.  She shook her head "no."  I asked her if it was maybe every other day, or at least a couple of times a week, and that's when she nodded her head "yes."

. . . .

Q.        So the entire time you talked about this you talked about where he touched her, whether it was over the clothes, under the clothes, and how often; is that correct?

A.        Yes, ma'am.

Q.        And did you discuss any other body parts involved?

6

A.                        No, ma'am.

Q.                        So she disclosed during her nodding and nonverbal responses what happened, correct?

A.                        Yes, ma'am.

Q.                        How often it happened, correct?

A.                        Yes, ma'am.

Q.                        And in the manner in which it happened; is that right?

A.                        Yes, ma'am.

In the State's argument after the Article 38.072 hearing, the prosecutors stated without objection:

[F]or the record, when [Stepmother] was describing the area that this defendant was allegedly touching [Jane], [Stepmother] was kind of moving her hand in a circular fashion around the hip area, could include the genital area, but there was no specific information about anything sexual going on at this point in time, but it was obviously concerning enough to her that she chose to disclose that to the child's . . . father.

. . . .

[F]or the record, [Stepmother] made a circular motion generally around her shoulders and her breast area as well as around her hip and genital area made a circular motion. Whether it was touched under the clothes or on the clothes or how many times, we don't even know what specific body part was touched by the nonverbal clues.

**D.    Voorhees's Testimony at the Hearing Described Specific Offenses Jane Told Her Appellant Had Committed.**

Voorhees testified at the Article 38.072 hearing that Jane told her that:

- There had been multiple occurrences of Appellant's misconduct, and Jane told Voorhees "in detail of four different occasions";

- In the summer when Jane was eleven years old and asleep in her bedroom, Appellant "came into her room[,] changed her clothes[, and] squeezed her boobs[,] and it hurt";

- Another time, Appellant "came in her room at night after she had been asleep, and she [was] . . . facing the wall[.]" "[H]e picked her up[,] laid her on her back, . . . pulled off her clothing[,] . . . played with her down there,"—which Jane explained meant that he "used his two pointer fingers [to] . . . pull[]" her labia apart—, and licked her vaginal area, with his tongue "going up and down."

### E. The Trial Court Designated Voorhees as the Outcry Witness.

At the end of the Article 38.072 hearing, the trial court declared:

Ms. Voorhees is the outcry witness; . . . in looking at the indictment as to the specifics of the indictment, there's nothing mentioned of those specifics in what was told to . . . [S]tepmother, so that will be admissible.

### F. We Review the Trial Court's Designation of an Outcry Witness for an Abuse of Discretion.

We review the trial court's decision for an abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Espinoza v. State*, 571 S.W.3d 427, 430 (Tex. App.—Fort Worth 2019, pet. ref'd). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016).

### G. Article 38.072 of the Texas Code of Criminal Procedures Governs the Admissibility of Jane's Outcry.

As this court recently explained,

Article 38.072 [of the Texas Code of Criminal Procedure] allows for the admission of an outcry statement by a child in the prosecution of certain offenses, including sexual offenses committed against children. As it relates to this case, the article applies only to statements by the [child]

complainant . . . that describe the alleged offense and that were made to the first person over the age of 18, other than the defendant.

*Wilson v. State*, No. 02-17-00280-CR, 2018 WL 6215889, at *9 (Tex. App.—Fort Worth Nov. 29, 2018, no pet.) (mem. op., not designated for publication); *see also* Tex. Code Crim. Proc. Ann. art. 38.072. As the Texas Court of Criminal Appeals has emphasized, however:

> [T]he statement must be more than words which give a general allusion that something in the area of child abuse was going on. In picking the particular wording of the "first person" requirement, the legislature was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children. . . . The portion of the statute catering to the hearsay prohibition demands that only the "first person" is allowed to testify. But the societal interest in curbing child abuse would hardly be served if all that "first person" had to testify to was a general allegation from the child that something in the area of child abuse was going on at home. Thus we decline to read the statute as meaning that any statement that arguably relates to what later evolves into an allegation of child abuse against a particular person will satisfy the requisites of [the statute]. The statute demands more than a general allusion of sexual abuse.

*Garcia*, 792 S.W.2d at 91. Courts have interpreted Article 38.072 as providing that the proper outcry witness is the first adult to whom the child complainant describes how, when, and where the abuse occurred. *Collins v. State*, No. 02-16-00146-CR, 2017 WL 119486, at *6 (Tex. App.—Fort Worth Jan. 12, 2017, pet. ref'd) (mem. op., not designated for publication). Outcries are event-specific, not person-specific, "meaning that multiple outcry witnesses may testify so long as each of them testifies to only one event and they do not simply repeat the same event." *Hines v. State*, 551 S.W.3d 771, 780 (Tex. App.—Fort Worth 2017, no pet.).

9

**H. Vorhees Was the Proper Outcry Witness for All the Indictment Allegations.**

The trial court did not abuse its discretion by designating Vorhees as the outcry witness. *First*, Appellant was indicted for committing continuous sexual abuse of a child by committing two or more of the following acts of sexual abuse against Jane:

1. Indecency with a Child–Sexual Contact, . . . by touching [Jane's] genitals . . . ;

2. Aggravated Sexual Assault of a Child, intentionally and knowingly caus[ing] the penetration of [Jane's] sexual organ . . . by [Appellant's] finger; [and]

3. Aggravated Sexual Assault of a Child, intentionally and knowingly caus[ing] the penetration of [Jane's] sexual organ . . . by [Appellant's] tongue[.]

Any combination of two of those acts of sexual abuse over the requisite period of thirty days or more would satisfy the predicate-offense elements of the statute. Tex. Penal Code Ann. § 21.02(b)(1), (c)(2)–(3), (d). None of Stepmother's questions discussed penetration, and Jane did not say anything at all to Stepmother and did not do anything to indicate to Stepmother that Appellant had penetrated her. The trial court therefore did not abuse its discretion by designating Voorhees as the outcry witness regarding the digital and oral penetration allegations because she was the first adult to whom Jane described Appellant's alleged acts of digital and oral penetration of her sexual organ. *See Britt v. State*, No. 02-17-00168-CR, 2018 WL 2346795, at *2 (Tex. App.—Fort Worth May 24, 2018, pet. ref'd) (mem. op., not designated for publication) ("The forensic interviewer was the initial person to whom Megan

10

described the indicted offense of aggravated sexual assault by penetration; therefore, the interviewer's testimony was admissible under article 38.072 . . . . Megan's earlier statement to the nurse examiner revealed only sexual contact and did not clearly allege penetration.").

*Second*, regarding the touching of Jane's genitals, we hold that the trial court did not abuse its discretion by naming Vorhees as the outcry witness and not Stepmother. Jane's nodding to Stepmother's questions about whether Appellant had "touched" her and Jane's hand motions, as vaguely reported by Stepmother in the written record on which we must rely, did not describe in a discernible way how, when, or where Appellant touched Jane; did not do more than generally allude to abuse; and did not amount to an outcry. *See Garcia*, 792 S.W.2d at 91; *Diaz v. State*, No. 05-04-00497-CR, 2005 WL 1908421, at *2 (Tex. App.—Dallas Aug. 11, 2005, no pet.) (not designated for publication) (holding trial court did not abuse discretion by designating forensic interviewer instead of child's aunt as outcry witness when child told aunt that the defendant kissed her with an open mouth, without panties on, and child answered no when her aunt asked whether he kissed her only on the mouth, pointing to "her part and behind"); *Chapman v. State*, 150 S.W.3d 809, 817 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (op. on reh'g) (holding child's nodding "yes" when asked if the defendant did "anything to her in a sexual way" was only a general allusion to abuse). *But see Nino v. State*, 223 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding mother who overheard child saying the defendant made him "suck it"

11

immediately before she saw the child point to his own penis and who convinced the child to tell her what had happened should have been the outcry witness); *Bradshaw v. State*, 65 S.W.3d 232, 240 (Tex. App.—Waco 2001, no pet.) (holding child's statement to mother that the defendant had been touching her was only a general allusion to sexual abuse but implicitly holding child's pointing between her legs when aunt asked her where the defendant had touched her and child's statement to aunt that he had "put his finger inside of her approximately three different times" supported the designation of aunt as the outcry witness).

We overrule Appellant's first issue.[4]

## II.    Appellant Forfeited His Remaining Evidentiary Complaints, and We Do Not Address Harm.

In his second issue, Appellant complains that the trial court abused its discretion by asking questions of former City of Graham Police Investigator Jim Reeves and Texas Ranger Michael Schraub that elicited their opinions about the truthfulness of Jane's allegations and Appellant's denials of those allegations. In his

---

[4]We note that each party claims that Jane told the respective witness the party champions as the outcry witness sufficient details to satisfy the thirty-day requirement of the continuous sexual abuse statute. *See* Tex. Penal Code Ann. § 21.02(b)(1) ("A person commits an offense if . . . during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse . . . ."). Both women reported at the hearing that Jane had indicated multiple incidents and identified Appellant as the perpetrator. Vorhees went further at trial, testifying that Jane mentioned seasons and years when specific acts occurred; those details indicated Appellant's inappropriate conduct occurred over a period exceeding thirty days.

third issue, Appellant complains that the trial court's errors of allowing the two officers to opine on Jane's credibility and his guilt were harmful, resulting in the denial of a fair trial.  The State argues that Appellant forfeited error.  We agree.

**A.  Appellant Forfeited Error Regarding Investigator Reeves's Testimony.**

**1.  Appellant Did Not Obtain an Adverse Ruling and Did Not Object Every Time Investigator Reeves Indicated That Jane Did Not Lie.**

When the prosecutor asked Investigator Reeves about Appellant's claim during his interview with law enforcement that Jane had lied about the abuse she suffered, the following exchange occurred:

Q.  And one of those lies is that [Jane] had lied to her mother by saying she [sic] had done this to her.  Wasn't that one of the lies that he mentioned?

A.  Yes, sir.

Q.  And what did we learn about that?

A.  Absolutely not.  *She had not lied.*  This girl stuck—

[Defense Counsel]:  *Objection, Your Honor. Calls for a conclusion on his part.*

THE COURT:  *Rephrase your question . . . .*

Q. (BY [Prosecutor])  Well, based on what you gathered from your investigation, was that an out-and-out lie?

A.  No.  No, *she had not lied.*

[Defense Counsel]:  *Objection, Your Honor. He's* [sic] *calling for a conclusion that this jury is entitled to make.*

13

| THE COURT: | *Well, that's the jury's prerogative as to determine the facts of the case.* |
|---|---|
| Q. (BY [Prosecutor]) | *Well, I take it you find some validity to the allegations.* |
| A. | *Yes.* |
| Q. | *Now, as an investigator . . . .* |

[Emphasis added.]

Generally, to preserve error, a party must object each time the objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.). Further, the party must obtain an express or implicit adverse ruling from the trial court or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Martinez v. State*, 17 S.W.3d 677, 686 (Tex. Crim. App. 2000). The trial court's directing the prosecutor to rephrase the question was not a ruling. *See, e.g.*, *Varela v. State*, No. 04-14-00563-CR, 2015 WL 1881551, at *3, n.1 (Tex. App.—San Antonio Apr. 22, 2015, no pet.) (mem. op., not designated for publication). Even if we held that it was a ruling, it would not be adverse to Appellant. *See* Tex. R. App. P. 33.1(a)(2); *Everitt*, 407 S.W.3d at 262–63; *Martinez*, 17 S.W.3d at 686; *Jones v. State*, No. 14-06-00292-CR, 2008 WL 323760, at *5 (Tex. App.—Houston [14th Dist.] Feb. 7, 2008, no pet.) (mem. op., not designated for publication). Further, by not objecting to the prosecutor's question about Jane's

14

allegations' validity, Appellant allowed the same or similar evidence to that objected to—Jane is credible—to be admitted without an objection. We therefore hold he forfeited error regarding these two objections.

### 2. Appellant's "Speculation" Objection to Investigator Reeves's Testimony About Appellant's Lack of Credibility Does Not Match His Appellate Complaint.

The next section of questions, answers, and objections Appellant discusses involves the prosecutor's questioning Investigator Reeves about the interview he and Ranger Schraub conducted with Appellant:

| Q. | And, as it was quite noticeable that as time went on in the interview the defendant was beginning to—I don't know whether he felt trapped inasmuch as y'all had let him know that there were possibly videos of things that were occurring, but he became a little more forthcoming. Would you say that he was still minimizing, or do you think he was out and out telling you everything that happened? |
|---|---|
| [Defense Counsel]: | *Objection, Your Honor. Speculation.* |
| [Prosecutor]: | I'm asking for his opinion as an investigator. |
| THE COURT: | I'll allow his opinion. |
| THE WITNESS: | In my opinion, he was not being truthful. He started out not being truthful, and, even though he did make some concessions when confronted with evidence, or possible evidence, at the end of the interview, it's still my opinion that he was being dishonest. He was not being truthful with us. |

[Emphasis added.]

15

The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464.

Appellant's complaint on appeal is that Investigator Reeves, whether as an expert or lay witness, improperly testified about Appellant's credibility. Appellant's speculation objection at trial to the prosecutor's question did not sufficiently inform the trial court of his appellate complaint and does not comport with his appellate complaint. *See Rogers v. State*, 402 S.W.3d 410, 416–17 (Tex. App.—Houston [14th Dist.] 2013) (holding speculation objection did not comport with appellate complaint that officer invaded the jury's province by improperly commenting on witness's truthfulness and was not sufficient to inform the trial court of the appellate complaint), *judgm't vacated on other grounds*, 426 S.W.3d 105 (Tex. Crim. App. 2014) (on State's petition for review, reversing intermediate court's judgment that affirmed the

conviction and sentence but deleted amount of costs assessed); *see also Herrera v. State*, Nos. 07-17-00166-CR, 07-17-00167-CR, 07-17-00168-CR, 2018 WL 1868124, at *1 (Tex. App.—Amarillo Apr. 18, 2018, no pet.) (per curiam) (mem. op., not designated for publication) (holding defendant's speculation objection to officer's testimony that defendant was not telling truth during his interrogation did not preserve his appellate argument that "Rule of Evidence 702 prohibits an expert witness from testifying that a particular witness is truthful"). We therefore hold that Appellant forfeited error regarding this objection.

We note that even if Appellant preserved his appellate complaint here, his failure to object to Investigator Reeves's testimony that he was not forthcoming about the abuse in the interview and his failure to object to all of Ranger Schraub's testimony that he was deceptive in the interview would have rendered any error harmless. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see also Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) ("Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove.").

### 3. Appellant's Objection to Investigator Reeves's Testimony that Appellant Was Not Telling the Truth When He Stated that He Could Have Accidentally Touched Jane's Genitals Was Invalid; Regardless, Appellant Did Not Secure an Adverse Ruling.

Appellant's next complaint concerns the following exchange:

17

| Q. (BY [Prosecutor]) | Now, when the defendant was talking to you about accidentally touching this child's vagina, what, in your opinion, is the defendant doing when he says something of that nature? |
|---|---|
| A. | He's minimizing his actions. |
| Q. | *In fact, how would you . . . characterize a statement like that?* |
| A. | *It's not a truthful statement.* |
| [Defense Counsel]: | *Objection, Your Honor. Invades the province of the jury.* |
| THE COURT: | *Rephrase your question, [Prosecutor], or move on to something else.* |
| [Prosecutor]: | *I'll move on, Your Honor.* |

[Emphasis added.]

An objection that a question or evidence "invades the province of the jury" is no longer a valid objection to opinion testimony in light of Rule 704 of the Texas Rules of Evidence, which states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Tex. R. Evid. 704; *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992), *superseded by statute on other grounds as stated in Ellison v. State*, 201 S.W.3d 714, 717 (Tex. Crim. App. 2006). Further, as we stated above, the trial court's instructing the prosecutor to rephrase the question was not an adverse ruling. *See* Tex. R. App. P. 33.1(a)(2); *Varela*, 2015 WL 1881551, at *3, n.1; *Jones*, 2008 WL 323760, at *5. We therefore hold that Appellant forfeited error regarding this objection.

18

### 4. Appellant Did Not Object Every Time Investigator Reeves Indicated that Appellant Was Lying in the Pre-Interview Encounter Appellant Had at the Young County Sheriff's Office.

The final objection Appellant discusses regarding the prosecutor's direct examination of Investigator Reeves was lodged during questioning regarding a video recorded when Jane's mother and Appellant went to the Young County Sheriff's Office and reported to an Officer Ford that Jane's father had called to tell them about her allegations that Appellant had sexually abused her:

| Q. | Well, when you reviewed that interview that took place over at the Sheriff's Office with Officer Ford, now, the defendant, . . . *was he lying during that?* |
|---|---|
| A. | *Yes, ma'am.* |
| [Defense Counsel]: | *Objection, Your Honor. Invades the province of the jury.* |
| THE COURT: | *Well, you have to be more specific, [Prosecutor]. Just a general sense, that's not allowed.* |
| Q. (BY [Prosecutor]) | *Was he being deceptive, in your opinion, as an investigator as to the allegation?* |
| [Defense Counsel]: | *Objection, Your Honor. I don't believe that the detective gets to tell the jury whether or not he's a liar or whether or not he's truthful.* |
| [Prosecutor]: | I asked his opinion as an investigator, Your Honor. |
| THE COURT: | *Well, I think you have to elaborate more than just that—* |
| [Defense Counsel]: | Your Honor, I will state for the record that the prosecution and the police will always |

|  |  |
|---|---|
|  | think the defendant is going to lie, so we can stipulate that. |
| [Prosecutor]: | Objection to the sidebar, Judge. |
| THE COURT: | *Reask the question, [Prosecutor].* |
| Q. (BY [Prosecutor]) | When you were reviewing the video and the defendant was with Officer Ford, he essentially denied anything ever having happened with this girl that was sexual; is that correct? |
| A. | That's correct, yes ma'am. |
| Q. | And what did he later tell you in his interview? |
| A. | That it had. |
| Q. | *Okay, so how would you characterize the statements that he made at the Law Enforcement Center?* |
| A. | *He was lying.* |
| Q. | *Okay.* And then . . . during his interview, did he ever tell you about anything that happened on E Street? |
| A. | No. |
| Q. | Did he ever tell you anything about licking her boobs? |
| A. | No. |
| Q. | Did he ever tell you about the oral sex that took place? |
| A. | No. |
| Q. | And so, based on everything that you learned from the forensic interview, would it be your opinion that he was not being forthcoming about the actual abuse that occurred? |

A.                          That's absolutely correct.

[Emphasis added.]

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Even if Appellant's initial objections had preserved his complaints— which we do not hold—we reiterate that the preservation rules require a party to object each time objectionable evidence is offered unless the party has obtained a running objection or has requested a hearing outside the presence of the jury. *Geuder*, 115 S.W.3d at 13; *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that Texas applies the "futility rule," meaning that even after a trial court overrules an objection to evidence, a party must keep making "futile" objections on pain of waiver). Thus, when Appellant chose not to repeat his objection to Investigator Reeves's testimony that Appellant was lying, he forfeited any error.

We note that even if Appellant had preserved the objection and even if the trial court had erred, the later admission of the unobjected-to testimony that Appellant was lying to Officer Ford at the sheriff's office would have rendered such error harmless. *See Valle*, 109 S.W.3d at 509; *see also Anderson*, 717 S.W.2d at 628.

21

**B.    Appellant Forfeited Error Regarding Texas Ranger Michael Schraub's Testimony.**

Ranger Schraub, who participated in the law enforcement interview of Appellant, also testified.  Appellant complains of the following exchange:

Q.    Okay.  When you're investigating a case, as far as actions of a defendant, or potential defendant, are you trained to look at certain aspects of their behavior to make determinations?

A.    Yes, sir, I am.

Q.    Okay.   And what kind of training do you have—or what kind of behavior are you specifically looking for?

A.    *Throughout your career as a police officer anytime you're always looking for different type behaviors that indicate deception such as people giving qualifying statements, people being extremely nervous, and that sort of thing.*

Q.    *Okay.*  Well, I mean, you make me nervous every time you walk in the office.  What's the difference between my nervousness per se or the nervousness of somebody who has potential issues?

A.    Well, in general, you can have a general conversation.   Like how a person enters a room in the beginning we kind of talk about normal everyday things and kind of calm their fears and let them know that you're there to find the truth and so forth.  *Most of the time, if people aren't trying to be deceptive with you, they'll calm down and just have a normal conversation.*

Q.    Okay. And are there any other red flags or potential issues you may be looking at when you're viewing, or observing, potential defendants?

A.    Other than the statements and . . . you ask them different details. *If there's something they want to talk about, they'll give a lot of details to you. If it's something they don't want to talk about, they'll give very short answers and so forth.*

Q.    Now, as a peace officer, as a Texas Ranger, you have to form opinions; is that correct?

A.    That's true, I do.

Q.    Is that part of your normal investigation mode?

A.    Yes, sir, it is.

Q.    Okay. What if you were not allowed to have opinions?

A.    Then there wouldn't be a whole lot of reason to be out there doing what I do.

Q.    Okay. So what we're going to talk about is your opinions of [Appellant] while you're observing him in the interview room. Okay?

A.    Okay.

Q.    *You talked earlier about behaviors, deceptive behaviors. Were you able to identify any deceptive behaviors in just his actions that caused you to have concerns about his truthfulness?*

[Defense Counsel]:    *Objection, Your Honor. We're not psychologists here. I think he's getting into the psychology of it.*

23

| | |
|---|---|
| [Prosecutor]: | Your Honor, I prefaced this. I asked for his opinions. He's entitled under Rule 702 to give his law enforcement opinion. |
| [Defense Counsel]: | And I will stipulate the law enforcement is always going to believe the client is being deceptive. |
| [Prosecutor]: | That's not a proper stipulation. |
| THE COURT: | *Overruled.* |
| THE WITNESS: | Now, what was the question? |
| Q. (BY [Prosecutor]) | Well, did you see any behaviors that, in your opinion, were deceptive? |
| A. | *Yes, I did. Obviously the statements, qualifying statements, that he only inserted—when we were asking him details about the potential crime, he was able to give a lot of details about some things in the general questioning and the events leading up to come into the interview room, but, when we asked details about exactly what happened, he was very short and didn't want to talk about that much, which is natural.* |

. . . .

| | |
|---|---|
| Q. | *Is there any deceptive behavior as far as details in one subject matter and then lack of detail in another subject matter that you recall?* |
| A. | *That's what I was recalling. As far as he just said he just took a pe[e]k. You know, we really had to drag it out or ask more details about exactly how he took a pe[e]k and how he released the panties and so forth like that, whereas when we were talking about the number of milligrams of Valium and so forth he gave several details.* |
| Q. | *Okay.* And so those are your opinions based on your observation. . . . |

[Emphasis added.] Appellant argues that the questions asked of Ranger Schraub and his answers

> were, if anything, more problematic [than Investigator Reeves's]. Ranger Schraub was presented as an expert who had been trained to identify "deceptive behaviors" in suspects. In his case, over objection, he was allowed to identify deceptive behaviors he observed from [Appellant] which included, first and foremost, [Appellant's] "qualifying statements" denying the offense.

However, by Appellant's own admission in his brief, Appellant's objection—"We're not psychologists here. I think he's getting into the psychology of it"—concerned Ranger Schraub's lack of training and qualifications to offer opinions about Appellant's deceptive behavior. Appellant's complaint on appeal is that a witness, whether an expert or a lay witness, cannot opine on a witness's or a party's credibility. The argument on appeal therefore does not comport with the trial objection. *See Clark*, 365 S.W.3d at 339; *Lovill*, 319 S.W.3d at 691–92; *Pena*, 285 S.W.3d at 464; *Stevens v. State*, No. 02-10-00139-CR, 2011 WL 5119572, at *5 (Tex. App.—Fort Worth Oct. 27, 2011, no pet.) (per curiam) (mem. op., not designated for publication). Additionally, Appellant did not object to the specific example of duplicity Ranger Schraub gave regarding Appellant's brief statements about "taking a pe[e]k" and letting go of Jane's panties versus the many details Appellant gave about his Valium usage. Thus, Appellant forfeited any error. *See Geuder*, 115 S.W.3d at 13; *Leday*, 983 S.W.2d at 718. Even if Appellant's objection had preserved error, the later,

25

unobjected-to admission of the same or similar evidence rendered any error harmless. *See Valle*, 109 S.W.3d at 509; *Anderson*, 717 S.W.2d at 628.

Having held that Appellant forfeited all complaints raised in his second issue, we overrule it.

## C.     We Do Not Perform a Harm Analysis of Unpreserved Error.

In his third issue, Appellant contends that the trial court's allowing Investigator Reeves and Ranger Schraub to opine about Jane's credibility and Appellant's guilt was harmful. *See* Tex. R. App. P. 44.2(b).  We have held that Appellant forfeited his complaints about the admissibility of their testimony.  We therefore also overrule Appellant's third issue. *See Harris v. State*, 364 S.W.3d 328, 340 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *cf. Vasquez v. State*, 501 S.W.3d 691, 706 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("Because no error was preserved between either of [defendant's] complaints, Rule 44.2 is not triggered.  We therefore decline [defendant's] invitation to perform a harm analysis for constitutional error.").

## CONCLUSION

Having overruled Appellant's three issues, we affirm the trial court's judgment.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 25, 2019