**AFFIRMED and Opinion Filed April 13, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01159-CR**

**ZACHARY DEAN JOLLIFF, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th District Court**
**Grayson County, Texas**
**Trial Court Cause No. 071936**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Smith and Breedlove
Opinion by Justice Breedlove

Appellant Zachary Dean Jolliff was convicted of burglary of a habitation with the intent to commit murder or aggravated assault and sentenced to 75 years in prison. Appellant now appeals, complaining that the State failed to establish a proper chain of custody for fourteen items admitted into evidence. We affirm the trial court's judgment.

## I.     BACKGROUND

Ariel Holley was severely injured when an attacker broke into her home in the middle of the night and then attempted repeatedly to break her neck and suffocate

her. Holley told police that appellant was the man who attacked her. Appellant was then indicted for the crime of burglary of a habitation with the intent to commit (1) murder or aggravated assault (Count One); or (2) sexual assault (Count Two). He pleaded not guilty, and the case was tried before a jury on December 3, 2021.

At trial, ten of the State's witnesses testified about the chain of custody for the fourteen items appellant challenges in this appeal:

- Officer Jacob Shoemate: an officer with the Denison Police Department who responded to Holley's 911 call.

- Officer Aaron Albarenga: an officer with the Denison Police Department who responded to Holley's 911 call.

- Ranger Brad Oliver: a Texas Ranger with the Texas Department of Public Safety, now retired, who assisted in the investigation and obtained various evidentiary samples from both victim and appellant.

- Detective Steven Kyle Mackay: a detective with the Denison Police Department who assisted in the investigation.

- Kathleen McRoy: a forensic scientist with the DPS lab who analyzed various hair samples as well as the buttons found at the scene.

- Detective Stuart Prigge: a detective with the Denison Police Department who assisted with the investigation of the case and interviewed appellant and Holley.

- Detective Tom Unerfusser: a detective with the Denison Police Department in the property and evidence room who oversaw the receipt and logging and of the evidence in the case and also supervised the exchange of evidence with the DPS lab.

- Courtney Wassung: a fingerprint analyst with the DPS lab who analyzed the print on the front porch lightbulb in comparison to the known print of appellant.

- Jenna Hamann: a serologist with the DPS lab who examined the victim's shirt for the presence of bodily fluid.

- Kristen Cossota: a forensic scientist with the DNA section of the DPS lab who conducted DNA analyses on various items of evidence.

The jury found appellant guilty on Count One[1] and sentenced him to 75 years in prison. Appellant filed a motion for new trial on December 28, 2021, asserting that the verdict was contrary to the law and the evidence. This motion was overruled by operation of law. TEX. R. APP. P. 21.8.

Appellant appealed the verdict on December 28, 2021. In one issue, appellant complains that the trial court abused its discretion in admitting physical evidence where the State failed to establish a proper chain of custody. In response, the State argues that the trial court did not abuse its discretion in denying appellant's objection to the chain of custody because any break in the chain was minor and went to the weight of the evidence, not its admissibility. Alternatively, the State argues that even if the trial court erred, the error was harmless.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *See Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses

---

[1] As to Count One, the jury charge did not require the jury to agree unanimously on which specific felony offense other than theft appellant intended to commit, or committed. The jury was only required to agree unanimously that the appellant intended to commit, committed, or attempted to commit murder or aggravated assault.

–3–

its discretion when its decision lies outside the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478; *Gonzalez*, 544 S.W.3d at 370.

A chain of custody is conclusively proven if an officer is able to identify that he or she seized the item of physical evidence, put an identification mark on it, placed it in the property room, and then retrieved the item being offered on the day of trial. *Morgan v. State*, No. 05-94-01004-CR, 1995 WL 259220, at *1 (Tex. App.—Dallas May 3, 1994, pet. ref'd) (mem. op., not designated for publication) (citing *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), overruled on other grounds by *Horton v. California*, 496 U.S. 128 (1990); *Luna v. State*, 493 S.W.2d 854, 856 (Tex. Crim. App. 1973); and *Elliott v. State*, 450 S.W.2d 863, 864 (Tex. Crim. App. 1970)). A chain of custody is sufficiently authenticated when the State establishes the beginning and the end of the chain, particularly when the chain ends at a laboratory. *Simmons v. State*, No. 05-11-01267-CR, 2013 WL 1614114, at *6 (Tex. App.—Dallas Feb. 20, 2013) (mem. op., not designated for publication) (citing *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd)). Absent proof of tampering, most problems with the chain of custody do not affect the admissibility of evidence, but rather go to the weight of the evidence. *Id.* (citing *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997)).

Further, Texas does not require a showing of chain of custody for admission of evidence that is readily identifiable. *Hammett v. State*, 578 S.W.2d 699, 708 (Tex. Crim. App. 1979), *cert. dism'd*, 448 U.S. 725 (1980). A chain of custody showing

–4–

is required when only scientific tests or analyses can distinguish the evidence's relevant characteristics. *Davis v. State*, 831 S.W.2d 426, 443 (Tex. App.—Austin 1992, pet. ref'd)) (citing *Hammett*, 578 S.W.2d at 708 and *Edlund v. State*, 677 S.W.2d 204, 210 (Tex. App.—Houston [1st Dist.] 1984, no pet.)). "The State is not obligated to prove chain of custody on such items as clothing." *Belcher v. State*, 661 S.W.2d 230, 233 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd) (citing *Hackbarth v. State*, 617 S.W.2d 944, 947 (Tex. Crim. App. [Panel Op.] 1981)).

## III. DISCUSSION

Appellant objects to 14 separate items, shown in the table below.

| | |
|---|---|
| SX 32 | Envelope of Evidence DPS Trace Analysts |
| SX 24[2] | Bankers Box |
| SX 24-A | Envelope from DPS |
| SX 24-V-1 | Buccal Swab from Victim's Mouth |
| SX 24-4 | Buccal Swab from Appellant's Mouth |
| SX 24-3 | Hair from Victim's Mouth |
| SX 28 | Front Porch Lightbulb |
| SX 22 | Head Hair of Victim (4/2/20) |
| SX 21A | Button – Collected 1/2/20 |
| SX 21B | Button – Collected 1/3/20 |
| SX 21C | Button – Collected 1/15/20 |
| SX 24-6 | Bag Containing Victim's Shirt |
| SX 24-6-A-1 | Victim's Shirt |
| SX 8 | Appellant's White Shirt |

---

[2] This item has no independent evidentiary significance beyond establishing the chain of custody for the items contained within it. The parties acknowledged at trial that the box was simply being labeled for identification purposes and was being admitted for chain of custody only, not as a standalone item of evidence. Therefore, we will not address the bankers box separately. Rather, we will address the item along with the chain of custody for the items contained within it. Similarly, the Envelope from DPS (SX24-A) and the Bag Containing Victim's Shirt (SX 24-6) also have no independent evidentiary significance beyond establishing the chain of custody for the items contained within them. Therefore, we will address these containers along with the chain of custody for the items contained within them.

We note at the outset that appellant made no allegation in the trial court that any of the objected-to items had been tampered with, and appellant makes no such argument in his brief before this Court.[3]  Because appellant did not raise the issue of tampering, any issues with the chain of custody established by the State go to the weight of the evidence, not its admissibility.  *See Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985) (internal citations omitted).

## A. Readily Identifiable Items

Appellant objects to the admissibility of five items of clothing: the three buttons (SX 21A, 21B, and 21C)[4], appellant's shirt (SX 8), and the victim's shirt (SX 24-6-A-1).

### 1. Buttons

Shoemate testified that he observed one of the buttons on the floor of the bathroom, and the jury was able to review footage from Shoemate's body camera showing the button in the location where Shoemate found it.  Additionally,

---

[3] Appellant broadly argues in his closing statement that the crime scene was not properly secured and that people "could have been going in and out of that house" after the crime.  However, he did not raise such objections to the trial court and request a ruling, or raise the argument in his brief before this Court; further, even if he had, that objection would have only impacted the buttons collected on January 3, 2020, and January 15, 2020, and the lightbulb collected on January 3, 2020, as the remaining evidence was either collected immediately after the crime occurred or was not collected at the crime scene.  Therefore, to the extent this argument could be broadly construed as raising the issue of tampering with regard to the later-collected buttons and lightbulb, we conclude that it was not properly preserved.  *See* TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333, 339 (to preserve error for appellate review, an appellant must show that he objected in the trial court).

[4] We acknowledge that buttons are not in themselves items of clothing; however, they are readily identifiable without scientific tests or analysis in the same way as a complete article of clothing.  Therefore, we analyze the buttons under the same framework as the other clothing items.

Albarenga testified that he received the shirt that appellant was wearing on the night of the attack from appellant's wife, and at that time he was able to observe the buttons remaining on the shirt. McRoy also provided her expert opinion that the buttons were visually similar to the buttons observed on the suspect's shirt. Prigge and McRoy both testified to several specific characteristics of the buttons, including their size, color, texture, and pearlescent appearance. The jury was also able to view body camera footage from Albarenga showing the buttons on the shirt as well as the missing buttons. Based on these pieces of evidence, the buttons were readily identifiable, and the jury could have made the determination that the buttons collected at the scene were the same buttons as they observed in the body camera footage from the two officers. Therefore, the trial judge did not err in admitting the buttons. *See Anderson v. State*, 504 S.W.2d 507, 510 (Tex. Crim. App. 1974) (holding that the state is not required to prove chain of custody if (1) the evidence is easily identifiable as a particular item; and (2) direct evidence shows that the same item was recovered at the scene).

Further, Prigge testified that he collected the buttons at the scene and delivered them to Unerfusser in the evidence room, and Unerfusser testified that they remained with him in the locked evidence room until he delivered them to the lab. McRoy testified that she received the buttons in the sealed envelope. Once the lab returned them in the sealed envelope, the buttons remained in that condition until they were delivered to the courthouse on the day of trial. Because an item's admissibility

requires only the beginning and end links in the chain of custody, the trial court did not err in admitting the buttons. *See Simmons*, 2013 WL 1614114, at *6 (citing *Martinez*, 186 S.W.3d at 62).

2. *Appellant's shirt*

Albarenga testified that he received the shirt that appellant was wearing on the night of the attack from appellant's wife and placed the shirt into an evidence bag which he delivered to Shoemate. Albarenga testified that the wife gave him the shirt specifically after he requested the items of clothing appellant had been wearing that evening. The jury was also able to view body camera footage from Albarenga showing the shirt, as well as photos and security camera footage showing appellant wearing the shirt the night of the attack. Based on these pieces of evidence, the shirt was readily identifiable, and the jury could have made the determination that the shirt introduced into evidence was the same shirt as they observed in the body camera footage, surveillance footage, and photographs. Therefore, the trial judge did not err in admitting the appellant's shirt. *See Anderson*, 504 S.W.2d at 510.

Further, after Albarenga collected the shirt from the scene of appellant's arrest, the shirt was placed inside a brown paper bag and delivered to the evidence room as testified to by Albarenga and Unerfusser, and McRoy testified that she received the sealed bag at DPS which Unerfusser had delivered. The bag was then resealed and returned to the evidence room until it was delivered to the trial court and unsealed on the day of trial. This testimony establishes both the beginning and

end of the chain of custody for appellant's shirt. Because we have both the beginning and the end of the chain of custody for this item, the trial court did not err in admitting it into evidence. *See Simmons*, 2013 WL 1614114, at *6 (citing *Martinez*, 186 S.W.3d at 62).

Because the buttons and appellant's shirt are readily identifiable based on the evidence submitted, and testimony established where the items were collected, no chain of custody is required to establish their admissibility. *See Anderson*, 504 S.W.2d at 510; *Belcher*, 661 S.W.2d at 233; *Hackbarth*, 617 S.W.2d at 947. Further, because the beginning and the end of chain of custody was established for the buttons and appellant's shirt, the trial court did not err in admitting these items. *See Simmons*, 2013 WL 1614114, at *6 (citing *Martinez*, 186 S.W.3d at 62). We overrule appellant's issues regarding items SX 21A, 21B, 21C, and SX 8.

### 3. *Victim's shirt*

No witness testified from personal knowledge as to where or when victim's shirt was collected. Further, although photos and video of the victim's clothing were available to the jury, no testimony established that the shirt in the bankers box was the same shirt that the victim was wearing the night of the attack or otherwise identified the shirt. Because the victim's shirt was not readily identifiable based on the evidence presented, and because no testimony established where the item was collected, the State was required to demonstrate chain of custody to prove admissibility. *See Anderson*, 504 S.W.2d at 510.

The only witness testimony regarding the chain of custody of the victim's shirt concerned its receipt at the lab in the white bankers box and its return to the evidence room. However, both the beginning and the end of chain of custody are necessary for an item's admissibility to be established. *See Simmons*, 2013 WL 1614114, at *6 (citing *Martinez*, 186 S.W.3d at 62). Therefore, the court erred in admitting the victim's shirt (SX 24-6-A-1), and we sustain appellant's objection as to the admissibility of this item.

However, even though the trial court improperly admitted the victim's shirt, we hold that such error was harmless because the other evidence of the appellant's guilt is overwhelming independent of the erroneously admitted shirt. *See Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986 (internal citations omitted).

**B. Items Requiring Chain of Custody**

The remaining items of evidence are not readily identifiable and therefore require the establishment of chain of custody. *See Belcher*, 661 S.W.2d at 233. Because an item's admissibility requires only the beginning and end links in the chain of custody, we will evaluate each item of evidence primarily to determine whether those links were present for each item. *See Simmons*, 2013 WL 1614114, at *6 (citing *Martinez*, 186 S.W.3d at 62).

*1. SX 32 – Envelope of evidence DPS trace analysts*

This is an envelope that was prepared by the trace analysts in the DPS crime lab in Garland, Texas. It originally contained seven head hairs from the right sleeve

of appellant's shirt as well as the known head-hair standards from the victim and appellant which were repackaged by the trace analysts at the lab. It appears from the record that appellant's objection was targeted at the items of evidence contained within the envelope and not the envelope itself. Therefore, we evaluate whether there was evidence in the record to establish chain of custody for (1) the seven head hairs from appellant's shirtsleeve; (2) the head-hair standards from the victim;[5] and (3) the head-hair standards from appellant.

### a. Head hairs from appellant's shirtsleeve

The hairs from appellant's shirtsleeve were originally noticed by Albarenga after he collected appellant's shirt from appellant's wife. According to his testimony, he unrolled the right sleeve and saw the hair wrapped around the cuff of the sleeve. He then put the shirt in a brown bag and gave it to Shoemate. Prigge testified that he examined the shirt once it was checked into evidence and found the hair on the cuff. He retrieved the hairs using tweezers while wearing gloves, and then put them in a manila envelope to be sent to the lab. This testimony establishes the beginning of the chain of custody for this item.

---

[5] Trial testimony was provided regarding two different sets of head-hair standards for the victim—the first, provided in January 2020 contained an insufficient number of hairs, so a second was collected on April 2, 2020. The record is unclear as to which standard was included in this envelope. Therefore, we will address only the second standard as the first was unusable and not relied upon by the State. The second standard is addressed in detail in a separate section below.

–11–

McRoy testified that she analyzed the hairs recovered from the sleeve while at the lab. She then forwarded them to the DNA section of the lab. Cossota testified that she also analyzed the hairs.

Unerfusser testified that on September 8, 2021, he drove to the lab to retrieve the sample. The sample was returned in an envelope (SX 24-A) inside the sealed bankers box (SX 24) that Unerfusser had previously packaged up for delivery to the lab. This testimony establishes the end of the chain of custody for this item. Because we have both the beginning and the end of the chain of custody for this item, the trial court did not err in admitting it into evidence. *See id.* (citing *Martinez*, 186 S.W.3d at 62).

### b. *Head-hair standard from appellant*

Oliver testified that he obtained the head-hair standards from appellant by using sterile tweezers while wearing latex gloves to remove hairs from multiple locations on appellant's head. He then put the sample into a zip bag which he put into a separate brown bag envelope, sealed up, and delivered to Mackay. This testimony establishes the beginning of the chain of custody for this item.

McRoy testified that she received the head-hair standard from appellant from an envelope (SX 24A) inside the sealed bankers box (SX 24) at the lab and analyzed them in comparison to the hair removed from the victim's mouth. She then forwarded the samples to the DNA section of the lab. Cossota testified that she then analyzed the hair in the victim's mouth.

Unerfusser testified that on September 8, 2021, he drove to the lab to retrieve the head-hair standard. The sample was returned in an envelope (SX 24-A) inside the sealed bankers box (SX 24) that Unerfusser had previously packaged up for delivery to the lab. This testimony establishes the end of the chain of custody for this item. Because we have both the beginning and the end of the chain of custody for this item, the trial court did not err in admitting it into evidence. *See id.* (citing *Martinez*, 186 S.W.3d at 62).

### 2. SX 24-V-1 – Buccal swab from victim's mouth

Prigge testified that he took buccal swabs from the victim's mouth while wearing gloves. He testified that he placed the swabs back in the original package, sealed them up, and sent them to the lab. This testimony establishes the beginning of the chain of custody for this item.

Unerfusser testified that on September 8, 2021, he drove to the lab to retrieve the sample. The sample was returned in a sealed bankers box (SX 24) that Unerfusser had previously packaged up for delivery to the lab. This testimony establishes the end of the chain of custody for this item. Because we have both the beginning and the end of the chain of custody for this item, the trial court did not err in admitting it into evidence. *See id.* (citing *Martinez*, 186 S.W.3d at 62).

### 3. SX 24-4 – Buccal swab from appellant's mouth

Oliver testified that he obtained the buccal swab of appellant's mouth by using two sterile swabs while wearing latex gloves to swab the inside of appellant's mouth.

He then put the swabs back into their original container, placed the container into a brown envelope that he sealed with tape and then delivered to Mackay. This testimony establishes the beginning of the chain of custody for this item.

Unerfusser testified that he retrieved the sample from the evidence locker on January 9, 2020. Unerfusser testified that on September 8, 2021, he drove to the lab to retrieve the sample. The sample was returned in a sealed bankers box (SX 24) that Unerfusser had previously packaged up for delivery to the lab. This testimony establishes the end of the chain of custody for this item. Because we have both the beginning and the end of the chain of custody for this item, the trial court did not err in admitting it into evidence. *See id.* (citing *Martinez*, 186 S.W.3d at 62).

### 4. SX 24-3 – Hair from victim's mouth

Shoemate testified at trial that he personally observed the nurse at the hospital collect the hair from the victim's mouth, and that once collected, Shoemate compared the hair to the victim's hair, then placed it inside an envelope, logged it as evidence, put it inside a sealed brown paper bag, and then delivered it to the evidence room. This testimony is corroborated by the victim's mother, who observed both the nurse remove the hair from the victim's mouth and Shoemate leave with the hair in his possession. This testimony establishes the beginning of the chain of custody for this item.

The sample was delivered by Shoemate to the evidence room the same day. Unerfusser testified that he personally took the sample to the lab on January 17,

2020. McRoy testified that she received the sealed banker's box (SX 24) at the lab and analyzed the hair in comparison to appellant's head-hair standard while at the lab. She then forwarded them to the DNA section of the lab. Cossota testified that she then analyzed the hair in the victim's mouth.

Unerfusser testified that on September 8, 2021, he drove to the lab to retrieve the sample. The sample was returned in an envelope (SX 24-A) inside the sealed bankers box (SX 24) that Unerfusser had previously packaged up for delivery to the lab. This testimony establishes the end of the chain of custody for this item. Because we have both the beginning and the end of the chain of custody for this item, the trial court did not err in admitting it into evidence. *See id.* (citing *Martinez*, 186 S.W.3d at 62).

### 5. SX 28 – Front porch lightbulb

Prigge testified that on January 3, 2020, he collected the front porch lightbulb from the crime scene. He noted that he removed it from the socket, dusted the bulb with fingerprint powder, and found a very good print on the bulb. He put the bulb in a bag and sent the bag to the lab. This testimony establishes the beginning of the chain of custody for this item.

Unerfusser testified that the lightbulb was delivered to the lab on January 17, 2020, and it returned from the lab on June 23, 2020. Wassung testified that while at the lab, she analyzed the fingerprint on the lightbulb. Unerfusser testified that because of COVID, the lab mailed the bulb back via FedEx, which he testified was

an acceptable way of sending and receiving items of evidence to and from the lab. This testimony establishes the end of the chain of custody for this item. Because we have both the beginning and the end of the chain of custody for this item, the trial court did not err in admitting it into evidence. *See id.* (citing *Martinez*, 186 S.W.3d at 62).

      6. *SX 22 – Head hair of victim (collected 4/2/20)*

Oliver testified that he collected the head-hair standard from the victim on April 2, 2020. He testified that immediately upon obtaining the sample, he put it in a white envelope, sealed it up, and then drove it immediately to the Denison Police Department and placed it into their evidence locker. This testimony establishes the beginning of the chain of custody for this item.

Unerfusser testified that after the hair sample was delivered to the evidence locker, he took the hair personally to the lab that same day. McRoy testified that she analyzed the head-hair standard from the victim while at the lab. She then forwarded the samples to the DNA section of the lab.

Unerfusser testified that on July 28, 2021, he drove to the lab to retrieve the sample. This testimony establishes the end of the chain of custody for this item. Because we have both the beginning and the end of the chain of custody for this item, the trial court did not err in admitting it into evidence. *See id.* (citing *Martinez*, 186 S.W.3d at 62).

Because the trial court did not err by admitting the objected-to evidence discussed above, appellant's concern that only Holley's uncertain identification supported his conviction is unfounded.

## IV.    CONCLUSION

We affirm the trial court's judgment.

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)

211159F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ZACHARY DEAN JOLLIFF,
Appellant

No. 05-21-01159-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. 071936.
Opinion delivered by Justice
Breedlove. Chief Justice Burns and
Justice Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered April 13, 2023